751 P.2d 690

**HERZOG CONTRACTING CORPORATION, a Missouri corporation, Plaintiff–Appellant,**

v.

**A & S CONSTRUCTION COMPANY, a Colorado corporation, and St. Paul Fire and Marine Insurance Company, a Minnesota corporation, Defendants–Appellees.**

No. 17065.

Supreme Court of New Mexico.

March 15, 1988.

Erwin & Davidson, David Mathews, Raton, Liles & Davison, Jeffrey B. Davison, St. Joseph, Mo., for plaintiff-appellant.

Robert S. Skinner, Raton, Carl W. Gellenthien, Canon City, Colo., for defendants-appellees.

## OPINION

SOSA, Senior Justice.

Plaintiff-appellant, Herzog Contracting Corporation (Herzog), brought suit against defendants-appellees, A & S Construction Company (A & S), and the latter's surety, St. Paul Fire and Marine Insurance Company (St. Paul). The complaint alleged that Herzog was the subcontractor to A & S on two paving construction jobs in Colfax County; that the two companies had entered into a contract whereby A & S promised to allow Herzog to begin its asphalt paving work by certain specified dates; that A & S breached the contract, entitling Herzog to damages of $750,000 (amended upward at trial); and that St. Paul was liable as A & S' surety under a performance bond and a labor and materials bond to pay Herzog $793,671.50. The trial court found in favor of Herzog on the issue of A & S' breach of contract, and awarded Herzog $72,964.26. Under its performance bond, St. Paul was adjudged to be liable to Herzog for the same amount. The trial court, however, refused to award Herzog damages of either some $803,000 or some $731,000 (Herzog presented evidence establishing two different amounts of damages). Since A & S does not appeal the court's judgment, the sole issue before us is whether the trial court erred in not awarding Herzog either of the two damage amounts requested at trial. After reviewing briefs of counsel, the extensive trial record, and all documentary and graphic exhibits, we conclude that the trial court did not err, and we thus affirm its judgment.

### FACTS

On June 12, 1984 Herzog and A & S entered into a contract whereby Herzog would perform the tasks of production, hauling and laying of asphalt for an airport paving job contracted by the City of Raton, and a highway improvement job (York Canyon) contracted by the New Mexico State Highway Department. The contract provided, "Work on airport to be 100% available by August 1 and York Canyon project by August 20 with both projects completed 1984." This language meant that A & S was to have its preliminary work done by the quoted dates so that Herzog could then begin its work. A & S was to prepare the subgrade for the asphalt and provide a six-inch subbase of gravel before A & S would begin to lay asphalt.

A significant issue at trial involved Herzog's allegations concerning the degree of temperature below which it could not proceed to do its work. By all accounts the laying of asphalt could not be satisfactorily accomplished at a temperature below forty degrees fahrenheit. For example, the contract provided by the City of Raton on the airport job stated: "B. Weather Limitations. Asphalt concrete shall not be placed on any wet surface, or when the atmospheric temperature is below 40° F * * *." It was Herzog's contention that, by forcing it to miss the starting dates specified in the contract (August 1 and August 20, respectively) A & S prevented Herzog from doing any work on the projects during the late summer and fall, causing it to suffer astronomical loss of profits during the winter months, attributable to A & S's delay. Herzog's evidence shows that the first day it was able to pave at the airport was October 10, 1984, and the first day it was able to pave on the highway project was December 7, 1984. Presumably the temperature was above 40° F. each of these days or Herzog would not have begun paving.

There is no doubt that A & S, for various reasons, prevented Herzog from beginning its work on time. For example, on the highway project A & S failed to prepare a portion of the subbase, and on the airport project A & S did an incompetent job laying subgrade and subbase. By mid-December, 1984 Herzog stopped work altogether. Yet, in April, 1985 and August, 1985 it returned to the job in order to finish both projects.

## ASSESSMENT OF DAMAGES

■ The evidence shows that Herzog's closing down of its asphalt plant for the months it was unable to work because of the cold was a result that was inevitable. Whether A & S breached the contract or not Herzog would have been unable to do any work on the two projects during the winter months. We are left then, with a question of damages. In assessing Herzog's damages a sufficient nexus must be established between A & S's breach and Herzog's claim for lost profits of either

$803,000 or $731,000 for a job on which Herzog otherwise admittedly expected $87,000 in profits. To increase its anticipated profits tenfold, Herzog must provide evidence that is certain, specific and definite, but it has failed to provide such evidence.

Herzog attempted to prove damages of approximately $100,000 per month for an eight and one-half month period on the alternative theories of "overhead earned", *see Juengel Constr. Co. v. Mt. Etna, Inc.,* 622 S.W.2d 510 (Mo.C.A.1981) and lost rental value of idle equipment, *see Mullinax Eng'g Co. v. Platte Valley Constr. Co.* 412 F.2d 553 (10th Cir.1969). On disputed facts, however, the trial court found to the contrary.

The trial court found that Herzog failed to establish with reasonable certainty any amounts of lost profits resulting from the delay in performance by A & S. Herzog was unable to demonstrate that it missed or failed to bid for any other job opportunity. Further, the court found that the evidence precluded the calculation of a period of time in which Herzog was prevented from using its plant, in light of the admixture during the claimed delay period of nonworking winter months and months of good weather during which Herzog in fact worked its plant.

On appeal, findings of fact will not be disturbed if supported by substantial evidence. Further, as A & S has correctly observed, Herzog has failed to properly challenge those findings which support the trial court's award of nominal damages for Herzog's lost profits.

We conclude that Herzog has failed to meet the most basic requirement for achieving its damages, namely proof based on *reasonable certainty* both as to the allowance of damages and as to the amount.

To authorize a recovery of more than nominal damages, facts must exist and be shown by the evidence which afford a reasonable basis for measuring the plaintiff's loss. The damages must be susceptible of ascertainment in some manner other than by mere speculation, conjec-

ture, or surmise and by reference to some fairly definite standard * * *.

22 Am.Jur.2d *Damages* § 25 (1965). *See also Deaton, Inc. v. Aeroglide Corp.*, 99 N.M. 253, 258, 657 P.2d 109, 114 (1983); *Ranchers Exploration & Dev. Corp. v. Miles*, 102 N.M. 387, 696 P.2d 475 (1985).

■ Herzog raises one further issue on appeal, alleging that St. Paul, under NMSA 1978, § 13–4–18 (Repl.Pamp.1985), sometimes referred to as the "Little Miller Act," is liable to Herzog for loss of profits under the labor and materials bond it wrote for A & S. Counsel for the parties have voluminously briefed this issue, but we need not enter into a detailed discussion of the relevant case law. Our statute clearly and unequivocally limits recovery against a surety in a situation such as this one to "all just claims for labor performed, and materials and supplies furnished...." *Id.* Nothing is said about recovery for loss of profits; nothing is said about "delay damages," and we decline to extend the meaning and purpose of the statute any further than the clear language would take it.

The judgment of the trial court is affirmed in its entirety.

IT IS SO ORDERED.

SCARBOROUGH, C.J., and RANSOM, J., concur.