*2006-NMCA-138*

145 P.3d 117

**Ivan S. BENAVIDEZ, Plaintiff–Appellant,**

**v.**

**Gina Denise BENAVIDEZ and Richard P. Salgado, Defendants–Appellees.**

**No. 25,750.**

Court of Appeals of New Mexico.

Sept. 13, 2006.

Roger Moore, Law Office of Roger Moore, Albuquerque, NM, for Appellant.

Ronald T. Taylor, Ronald T. Taylor Law Office, Albuquerque, NM, for Appellees.

## OPINION

FRY, Judge.

{1} Plaintiff Ivan S. Benavidez appeals from the district court's order dismissing with prejudice his action for unlawful detainer of property and damages, and from the court's imposition of sanctions under Rule 1–011 NMRA. In the course of a prior probate proceeding, Plaintiff had agreed to purchase the subject property from the estate of Benjamin Benavidez, and the probate court entered an order allowing Defendant Gina Denise Benavidez to reside on the property until the "closing on the sale of the property." Plaintiff argues that he obtained legal ownership of the property, along with the right to evict Defendants, upon the execution of a warranty deed on December 11, 2003, even though he did not pay for the property in full until May 26, 2004. We conclude that the district court correctly determined that the closing occurred May 26, 2004, and thus, that Plaintiff had no right to evict Defendants until that date. On the issue of sanctions, Plaintiff contends his belief that his ownership interest began on December 11, 2003, enabled him to file a good faith complaint without incurring sanctions for violating the probate court order. We hold that the record in this case is sufficient to support the district court's imposition of sanctions.

Therefore, we affirm the judgment of the district court.

## I. BACKGROUND

{2} Plaintiff and Defendants resided in opposite sides of a duplex owned by Benjamin Benavidez until his death. Benjamin was Plaintiff's father and Defendant Gina Benavidez's grandfather. Defendant Richard P. Salgado is Gina's husband. Plaintiff is Gina's uncle. During probate proceedings in the matter of the estate of Benjamin Benavidez, Plaintiff obtained the court's approval to purchase the duplex from the estate. Also in the probate proceedings, the court ordered that "[b]y consent of the Estate, Ms. Benavidez can continue to reside at the apartment . . . without charge, until the closing on the sale of the property."

{3} On February 5, 2003, Plaintiff entered into a purchase agreement with his sister, Rebecca Benavidez Carrillo, the personal representative of the estate. This purchase agreement states that the "[b]alance at closing will be paid by purchaser." On December 3, 2003, Plaintiff paid $18,810.20 in closing costs to Stewart Title Company toward the purchase price of $183,500. On December 11, 2003, the personal representative executed a warranty deed, but Plaintiff did not pay in full until May 26, 2004. It is unclear from the record why payment in full was not made in December 2003. There is nothing in the record indicating that the deed was ever delivered to Plaintiff.

{4} In a certified letter dated December 17, 2003, Plaintiff demanded that Defendants surrender and vacate the subject property no later than December 27, 2003. When Defendants did not do so, Plaintiff filed a complaint for unlawful detainer of property and damages. Plaintiff's verified complaint alleged that on "December 3, 2003, the Plaintiff purchased the subject property from the estate of Benjamin Benavidez, as approved by the Probate Court." Plaintiff moved for summary judgment and the district court issued a letter decision in his favor. Meanwhile, Defendants found out that the only deed recorded with the Bernalillo County Clerk was dated May 26, 2004. Defendants subpoenaed Glenn Schwerin, the president of Stewart Title, and requested that he produce documents relating to the sale in question. Plaintiff filed a motion for protective order and a request to quash subpoena.

{5} At the presentment hearing on summary judgment for Plaintiff, the district court denied the motion for protective order and request to quash subpoena and ordered that the documents from the title company be brought before the court. Mr. Schwerin submitted documents clearly indicating that Plaintiff did not pay the entire balance due on the duplex until May 26, 2004, as well as a letter stating that the "December 3, 2003 closing never took place and the documents [prepared in December] have been destroyed." In addition, Plaintiff himself admits in his brief in chief that "[t]he balance owed, and full balance of the $183,500.00 was paid by [Plaintiff] at the May 26, 2004 closing."

{6} Upon reviewing this evidence at the next hearing, the district court dismissed the case with prejudice, making an oral ruling that Plaintiff did not close on the property until May 26, 2004, and, therefore, that he had no legal right to evict Defendants before then. The hearing also revealed that Plaintiff never obtained the deed dated December 11, 2003, from the title company. The district court sanctioned Plaintiff for $6,699.28 in attorney fees and costs, pursuant to Rule 1–011. Plaintiff challenges the district court's ruling as to the date of closing, the imposition of sanctions, and claims there was insufficient evidence to support the district court's findings of fact.

## II. DISCUSSION

### A. Transfer of Warranty Deed Without Payment in Full Was Not a Closing

{7} Plaintiff argues that the closing on the sale of the property occurred when the personal representative executed the warranty deed on December 11, 2003, not when he paid in full and concluded all paperwork on May 26, 2004. At issue is the interpretation of the order in the probate proceeding that permitted Defendants to continue to reside in the duplex until the closing. The interpretation of writings is a

question of law, which we review de novo. *See Krieger v. Wilson Corp.,* 2006–NMCA–034, ¶ 12, 139 N.M. 274, 131 P.3d 661 (stating that interpretation of unambiguous language in a contract is subject to de novo review), *cert. granted,* 2006–NMCERT–003, 139 N.M. 353, 132 P.3d 1039; *Bajart v. Univ. of N.M.,* 1999–NMCA–064, ¶ 7, 127 N.M. 311, 980 P.2d 94 (explaining that interpretation of the meaning of statutory language is a matter of law reviewed de novo).

{8} In order to establish when the closing occurred, we first determine the meaning of "closing" in the context of this case. The order in the probate proceeding states that "[b]y consent of the Estate, Ms. Benavidez can continue to reside at the apartment … without charge, until the closing on the sale of the property." The "same rules of interpretation apply in construing the meaning of a court order or judgment as in ascertaining the meaning of other written instruments." *Lone Star Cement Corp. v. Fair,* 467 S.W.2d 402, 404–05 (Tex.1971) (original petition for writ of mandamus). The plain meaning of the language used is the primary indicator of intent. *See Santa Fe Technologies, Inc. v. Argus Networks, Inc.,* 2002–NMCA–030, ¶ 52, 131 N.M. 772, 42 P.3d 1221 (explaining that in interpreting contract language, court will apply plain meaning); *High Ridge Hinkle Joint Venture v. City of Albuquerque,* 1998–NMSC–050, ¶ 5, 126 N.M. 413, 970 P.2d 599 (stating the plain meaning rule as applied to statutory interpretation).

{9} The meaning of the word "closing," according to Black's Law Dictionary, is: "The final meeting between the parties to a transaction, at which the transaction is consummated; esp., in real estate, the final transaction between the buyer and seller, whereby the conveyancing documents are concluded and the money and property transferred." Black's Law Dictionary 272 (8th ed.2004). Furthermore, courts have applied this common understanding of "closing" to judicial interpretation of real estate transactions, noting

> a distinction between an acceptance of an offer to purchase and the closing of a sale, after the option has been exercised. The

acceptance of an offer to sell real estate creates a binding obligation on both parties. The closing of the sale thereafter is the fulfillment of the obligations created by the contract.

*McMillan, Ltd. v. Warrior Drilling & Eng'g Co.,* 512 So.2d 14, 23 (Ala.1986) (emphasis omitted).

{10} In this case, the personal representative executed a warranty deed on December 11, 2003, but Plaintiff did not pay in full until May 26, 2004. As a result, Plaintiff had not fulfilled all his obligations created by the purchase agreement until May. Consequently, the execution of the warranty deed in December did not constitute a closing. The closing on the sale of the property took place on May 26, 2004, at which time all contractual obligations between the parties concluded.

{11} Plaintiff argues that title transferred to him upon execution of the warranty deed. Even if this were the case, Plaintiff cites no authority supporting his contention that the transfer of title superseded the probate order permitting Defendants to reside in the property until closing. "Issues raised in appellate briefs that are unsupported by cited authority will not be reviewed." *Wilburn v. Stewart,* 110 N.M. 268, 272, 794 P.2d 1197, 1201 (1990). In addition, we observe that it does not appear that the deed executed on December 11, 2003, was delivered to Plaintiff. "In order for a deed to be valid, it must be legally delivered." *Vigil v. Sandoval,* 106 N.M. 233, 235, 741 P.2d 836, 839 (Ct.App.1987). Therefore, the events of December 11, 2003, were not a closing.

**B. Rule 1–011 Sanctions Were Appropriate**

{12} Plaintiff contends that the district court erred in imposing sanctions pursuant to Rule 1–011 because he had a good faith basis to believe that he had purchased the property from the estate of Benjamin Benavidez in December 2003. For the reasons below, we disagree.

{13} We review a lower court's imposition of sanctions under an abuse of discretion standard. *Rivera v. Brazos Lodge*

*Corp.,* 111 N.M. 670, 674–75, 808 P.2d 955, 959–60 (1991); *see also Enriquez v. Cochran,* 1998–NMCA–157, ¶¶ 18, 20, 126 N.M. 196, 967 P.2d 1136 (addressing the review of sanctions for abuse of the discovery process). Under this standard, we consider the full record to determine whether the district court's decision is without logic or reason, or clearly unable to be defended. *See Gonzales v. Surgidev Corp.,* 120 N.M. 151, 158, 899 P.2d 594, 601 (1995). "[T]he question on review is not whether this [C]ourt would have applied the sanction but whether the district court abused its discretion in so doing." *Rivera,* 111 N.M. at 675, 808 P.2d at 960.

{14} Rule 1–011 requires "that to the best of the signer's knowledge, information and belief there is good ground to support" any motion, pleading, or other paper submitted to the court. Furthermore, Rule 1–011 states that for "a willful violation of this rule an attorney or party may be subjected to appropriate disciplinary or other action." In New Mexico courts, unlike in federal courts, the "good ground" requirement is a subjective standard that "depends on what the attorney or litigant knew and believed at the relevant time and involves the question of whether the litigant or attorney was aware that a particular pleading should not have been brought." *Rivera,* 111 N.M. at 675, 808 P.2d at 960. District courts may exercise discretion to impose sanctions when "a pleading or other paper signed by an attorney is not well grounded in fact, is not warranted by existing law or a reasonable argument for its extension, or is interposed for an improper purpose." *Id.* at 674, 808 P.2d at 959.

{15} This Court has affirmed district courts when Rule 1–011 sanctions are based on findings of facts that are supported by evidence in the record. In *Doña Ana Sav. & Loan Ass'n, F.A. v. Mitchell,* 113 N.M. 576, 580, 829 P.2d 655, 659 (Ct.App.1991), we upheld the imposition of sanctions against the defendant's attorney for filing an answer for purposes of delay in a case involving a suit to collect on a promissory note. The answer denied the complaint's allegations of the defendant's failure to pay and demanded an accounting of the amount owed. *Id.* at 577, 829 P.2d at 657. The district court made specific findings of fact and conclusions of law that, combined with the defendant's own admission that she did not have a meritorious defense, exposed the disingenuous pleading and justified the sanctions. *Id.* at 580, 829 P.2d at 659. This Court ruled that the findings, conclusions, and admissions were sufficient to satisfy the subjective "good ground" requirement that the defendant willfully acted in bad faith. *Id.*

{16} In contrast to upholding sanctions that are based on findings and conclusions by the district court, appellate courts may vacate or remand sanctions that lack the support of specific evidence in the record. For example, in *Rivera,* a quiet title action, the district court entered summary judgment for the defendant and sanctioned the plaintiff and his attorney in accordance with Rule 1–011 for filing a pleading without good faith to support it. *Rivera,* 111 N.M. at 671, 808 P.2d at 956. The Supreme Court remanded for further proceedings because the district court did not provide specific findings or conclusions in support of the sanctions. *Id.* at 676, 808 P.2d at 961.

{17} In the present case, the district court based its imposition of sanctions on specific findings of fact and conclusions of law supported by the evidentiary record. As in *Doña Ana Sav. & Loan Ass'n, F.A.,* where the evidence showed that the defendant did not plead with good cause, the closing documents from the title company in this case confirm that Plaintiff did not make payment in full until May. This supports the district court's finding that Plaintiff could not have pleaded with good cause that the transaction was closed in December. In addition, the letter from the president of Stewart Title stated that "the December 3, 2003 closing never took place." Unlike the circumstances in *Rivera,* where there was no fact-specific evidence that indicated bad faith, here the title documents signed by Plaintiff show that he knew the transaction had not closed until May. Furthermore, the purchase agreement between Plaintiff and the personal representative of the estate of Benjamin Benavidez stated, "[b]alance at closing will be paid by

purchaser." Plaintiff admits he did not pay the balance due until May. Therefore, the district court's sanction is supported by Plaintiff's own admissions and other evidence.

{18} Plaintiff also argues that he filed his complaint in good faith because he subjectively believed that he had title to the property upon receiving the warranty deed in December 2003. We need not determine when title passed because the question at issue is when Plaintiff closed on the sale of the property, not whether he obtained title by the time he evicted Defendants.

{19} The district court did not abuse its discretion in imposing sanctions pursuant to Rule 1–011 because it did so based on findings of fact and conclusions of law that are supported by evidence in the record.

## C. Substantial Evidence Supports the District Court's Findings

{20} Plaintiff challenges several of the district court's findings of fact and conclusions of law, asserting that they are not supported by substantial evidence. We disagree.

{21} We are deferential to facts found by the district court, but we review conclusions of law de novo. *Strata Prod. Co. v. Mercury Exploration Co.*, 1996–NMSC–016, 121 N.M. 622, 627, 916 P.2d 822, 827. "[W]hen a [district] court makes specific written findings of fact that are supported by substantial evidence, those findings prevail over any inconsistent conclusions of law or an inconsistent judgment." *State v. Walker*, 1998–NMCA–117, ¶ 7, 125 N.M. 603, 964 P.2d 164. "When a party is challenging a legal conclusion, the standard for review is whether the law correctly was applied to the facts." *Golden Cone Concepts, Inc. v. Villa Linda Mall, Ltd.*, 113 N.M. 9, 12, 820 P.2d 1323, 1326 (1991).

{22} Plaintiff challenges a finding that Plaintiff stated he had purchased the property on December 3, 2003. This finding is supported by Plaintiff's own verified complaint and motion for summary judgment. He also challenges the findings that Plaintiff could not provide proof that he had purchased the property on December 3, 2003,

and that he knew when he filed his suit that he had not closed on the property on that date. Yet Plaintiff admits that he did not pay in full until the following year at "the May 26, 2004 closing."

{23} Plaintiff challenges additional findings, but his challenges are unclear because he fails to explain why the evidence relating to the findings is not sufficient, yet he attempts to support his challenge with reasons that are not relevant or specific to the findings. We therefore need not address his challenges. *See Aspen Landscaping, Inc., v. Longford Homes of N.M., Inc.*, 2004–NMCA–063, ¶¶ 28–29, 135 N.M. 607, 92 P.3d 53 (explaining that a party challenging a finding for lack of substantial evidence must refer to "all of the evidence, both favorable and unfavorable, followed by an explanation of why the unfavorable evidence does not amount to substantial evidence, such as is necessary to inform both the appellee and the Court of the true nature of the appellant's arguments"); *Clayton v. Trotter*, 110 N.M. 369, 373, 796 P.2d 262, 266 (Ct.App. 1990) (explaining that an appellate court need not consider unclear arguments).

{24} The reasons that Plaintiff puts forward do not support his challenges. He challenges a finding that Defendants prevailed because Plaintiff's verified complaint had been dismissed with prejudice. While acknowledging that this finding is factually accurate, Plaintiff attempts another attack on the court's determination that the closing occurred on May 26, 2004. However, we have already upheld the court's determination of the closing date. Plaintiff also challenges the court's findings that Defendants incurred attorney fees after the submission of an itemized statement and that the fees listed in the statement were reasonable. We conclude these findings are supported by substantial evidence based on the attorney's itemized statement of fees and the attorney's attendance at a hearing after the submission of the itemized statement. Plaintiff's attack on these findings based on an argument that imposition of sanctions was unwarranted is not viable because we have already ruled that the sanctions were warranted.

{25} Plaintiff challenges all of the district court's conclusions of law, citing *Torres v. Plastech Corp.*, 1997–NMSC–053, ¶ 13, 124 N.M. 197, 947 P.2d 154, which states that "[c]onclusions of law must be supported by findings of ultimate fact." Plaintiff seems to argue that if the findings of fact are not supported by the evidence, any conclusions of law that rest upon them are flawed. However, we hold that the findings of fact are supported by substantial evidence. Plaintiff does not argue that the district court incorrectly applied the law to the facts in formulating its conclusions of law. *See Golden Cone Concepts, Inc.*, 113 N.M. at 12, 820 P.2d at 1326 (stating that we review challenges to legal conclusions by determining whether the law was correctly applied to the facts). Therefore, we uphold the district court's findings of fact and conclusions of law.

## III. CONCLUSION

{26} For the foregoing reasons, we affirm the district court's judgment dismissing Plaintiff's complaint with prejudice and imposing sanctions pursuant to Rule 1–011.

{27} IT IS SO ORDERED.

WE CONCUR: JONATHAN B. SUTIN and RODERICK T. KENNEDY, Judges.