This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**IN THE MATTER OF BEVERLY KUTZNER PETITIONER; FIRST PROVIDEN, LLC., TRANSFEROR; BEVERLY KUTZNER**,

No. 29,651

**IN RE J. ROBERT BEAUVAIS,**

Attorney-Appellant.

**APPEAL FROM THE DISTRICT COURT OF CHAVES COUNTY**
**Ralph D. Shamas, District Judge**

Hennighausen & Olsen LLP
Kenneth B. Wilson
Roswell, NM

for Beverly Kutzner

J. Robert Beauvais
Ruidoso, NM

Pro Se Appellant

**MEMORANDUM OPINION**

**BUSTAMANTE, Judge.**

J. Robert Beauvais (Appellant) appeals from the district court's order imposing sanctions for violations of Rule 1-011 NMRA. We issued a calendar notice proposing to affirm. Appellant has filed a timely memorandum in opposition. We have duly considered the arguments raised in the memorandum in opposition. Remaining unpersuaded, we affirm the district court's imposition of sanctions under Rule 1-011.

**Recusal**

Appellant argues that Judge Shamas abused his discretion by denying the motion to disqualify him from hearing the case. **[MIO 1-2]** "[R]ecusal rests within the discretion of the trial judge, and will only be reversed upon a showing of an abuse of that discretion." *State v. Riordan*, 2009-NMSC-022, ¶ 6, 146 N.M. 281, 209 P.3d 773. "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case. We cannot say the trial court abused its discretion by its ruling unless we can characterize it as clearly untenable or not justified by reason." *State v. Rojo*, 1999-NMSC-001, ¶ 41, 126 N.M. 438, 971 P.2d 829 (filed 1998) (internal quotation marks and citations omitted).

Rule 21-400(A)(1) NMRA requires a judge to recuse himself or herself in proceedings where the judge has a personal bias or prejudice concerning a party or a party's lawyer. In his motion to disqualify Judge Shamas, Appellant alleged that Judge Shamas had demonstrated a personal bias against him and could not proceed

impartially in the matter. **[RP 176-78]** Specifically, Appellant asserted that Judge Shamas had threatened him with contempt on two of the three occasions that Appellant appeared before him. He also alleged that Judge Shamas demonstrated he had prejudged the case by issuing an order to show cause without first holding a hearing, violating Appellant's right to due process. **[RP 177]** The motion also alleged that Appellant "reasonably believes that Judge Shamas' acts were taken with personal animus towards him and the proceeding[s]." **[RP 177]**

We begin with Appellant's contention that Judge Shamas demonstrated that he was biased against him because on two of the three occasions in which Appellant appeared before him, Judge Shamas threatened him with contempt. A judge's threat to hold an attorney in contempt, without more, does not establish a lack of impartiality requiring recusal. *See Purpura v. Purpura*, 115 N.M. 80, 84, 847 P.2d 314, 318 (Ct. App. 1993) (rejecting defendant's argument that judge was biased based on judge's prior imposition of contempt charges and sanctions because bias requiring recusal must stem from a personal extrajudicial source, not a judicial one). We note that a court's threat of contempt may be reasonable and necessary. *See State v. Ngo*, 2001-NMCA-041, ¶ 23, 130 N.M. 515, 27 P.3d 1002 (noting that the exercise of the court's inherent contempt power has always been regarded as a necessary incident and attribute of courts because it is essential to the preservation of order in judicial

proceedings). As discussed further below, we find no indication that the imposition of contempt sanctions in either instance was inappropriate. Additionally, Judge Shamas denied having any bias towards Appellant. *See State v. Wittgenstein*, 119 N.M. 565, 568, 893 P.2d 461, 464 (Ct. App. 1995); *Purpura*, 115 N.M. at 84, 847 P.2d at 318.

We also reject Appellant's argument that the district court showed bias against him by issuing the order to show cause without first holding a hearing. Appellant argues that by issuing the show cause order based on the findings in the special master's preliminary report, the district court demonstrated that it had prejudged the issue. Appellant argues that, had the district court waited until the special master's final report, he would have seen that there was a reasonable legal basis for Appellant's charging lien and his assertions regarding Ms. Kutzner's right in Megan Samsoe's estate. Appellant also argues that by issuing the order to show cause before holding a hearing on the issue, he was denied due process.

We disagree that this demonstrates bias. Appellant cites no authority for his argument that a hearing is required before a show cause order can be issued. *See State v. Nysus*, 2001-NMCA-102, ¶ 30, 131 N.M. 338, 35 P.3d 993 (stating that when an appellant cites no authority to support a specific proposition, the appellate court presumes that no supporting authority exists.). Based on our review of the record, the

4

supplemental order to show cause set out the allegations in the special master's report that the court believed may be subject to sanctions and ordered Appellant to respond and show cause why sanctions should not be imposed. The district court held a hearing on the order to show cause at which Appellant was afforded an opportunity to present any response that he had to the allegations in the supplemental order to show cause. *See Doña Ana Sav. & Loan Ass'n, F.A. v. Mitchell*, 113 N.M. 576, 579, 829 P.2d 655, 658 (1991) (holding that an attorney sanctioned for violating Rule 1-011 was afforded due process where the district court gave the attorney notice of the essential facts and also notice and an opportunity to be heard). We therefore disagree that Appellant was denied due process. Additionally, as a hearing was held on the order to show cause before any sanctions were imposed against Appellant, we reject Appellant's argument that the district court prejudged the issue by issuing the order to show cause without a hearing. For these reasons, we hold that the district court did not abuse its discretion in denying Appellant's motion to recuse.

Appellant also argues that Judge Shamas was required to recuse himself because he stated at the show cause hearing that he had accessed CASELOOKUP and determined that Appellant was familiar with the process for filing charging liens and had stated that Appellant had filed a number of collection actions. **[MIO 3-4]** We disagree. It does not appear that Judge Shamas formed a bias against Appellant based

on this information. In order to be disqualifying, alleged judicial bias must "'stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case.'" *United Nuclear Corp. v. General Atomic Co.*, 96 N.M. 155, 247, 629 P.2d 231, 323 (1980) (quoting *United States v. Grinnell Corp.*, 384 U.S. 563, 583 (1966)). Rather, the court considered it relevant to Appellant's claim that he believed that the charging lien was proper, which was relevant to Appellant's assertion that he believed he had good grounds to file the charging lien.

In his memorandum in opposition, Appellant asserts that Judge Shamas' comments were directed at the manner in which he handled the Megan Samsoe probate proceeding. Appellant notes that Judge Shamas stated that Appellant had no right to determine whether a pretermitted heir existed. Appellant states that Judge Shamas ignored his objection that the probate matter had nothing to do with the matter before the court. Appellant also states that Judge Shamas continued to reference the special master's report, despite saying that he would not. **[MIO 5]**

We disagree that any of this establishes bias towards Appellant. We do not believe that Appellant's conduct in the probate matter was irrelevant to the issue before the district court. Nor do we find any error in Judge Shamas' reference to the special master's report. *See* Rule 1-053(E)(1) NMRA (providing that a special master

shall prepare a report upon the matters submitted to him and file it with the clerk of the district court).  Finally, we note that Appellant's subjective belief that the district court judge had a personal animus against him is insufficient to establish bias.  *See Roybal v. Morris*, 100 N.M. 305, 308, 669 P.2d 1100, 1103 (Ct. App. 1983) (stating that "[s]uspicion of bias or prejudice is not enough to disqualify a judge").  For these reasons, we hold that the district court did not abuse its discretion in refusing to withdraw from the case.

**Rule 1-011 Sanctions**

"Rule 1-011 allows a court to 'exercise its discretion and impose sanctions for a willful violation of the rule when it finds, for example, that a pleading or other paper signed by an attorney is not well grounded in fact, is not warranted by existing law or a reasonable argument for its extension, or is interposed for an improper purpose.'" *Air Ruidoso, Ltd., Inc. v. Executive Aviation Ctr., Inc.*, 1996-NMSC-042, ¶ 15, 122 N.M. 71, 920 P.2d 1025 (quoting *Rivera v. Brazos Lodge Corp.*, 111 N.M. 670, 674, 808 P.2d 955, 959 (1991)).  "Generally, appellate courts review a district court's imposition of Rule 1-011 sanctions for an abuse of discretion." *Rangel v. Save Mart, Inc.*, 2006-NMCA-120, ¶ 12, 140 N.M. 395, 142 P.3d 983.  "An abuse of discretion occurs when a ruling is clearly contrary to the logical conclusions demanded by the

facts and circumstances of the case." *Sims v. Sims*, 1996-NMSC-078, ¶ 65, 122 N.M. 618, 930 P.2d 153.

In this case, the district court found that Appellant violated Rule 1-011 because, in his response to the petition for approval of transfer of the structured settlement, Appellant asserted that he was an interested party by virtue of the charging lien he filed in the Megan Samsoe probate case. **[RP 221]** The court found that this representation was made to lead the court to believe that the fees claimed in the charging lien were incurred for legal work done to obtain the structured settlement for Megan Samsoe. **[RP 221]** Based on this representation, the court approved a payment of $10,000 to Appellant "to provide full and complete satisfaction of his charging lien." **[RP 221-222]**

In his memorandum in opposition, Appellant continues to argue that it was unreasonable for the district court to conclude that he intended to mislead the court about the charging lien because he did not appear at the hearing when the transfer of the structured settlement was approved, the references to the amount due in the charging lien were stipulated to by all counsel, and the court approved the transfer based on the documentation. **[MIO 6-7]**

However, it is irrelevant whether Appellant personally appeared in court when the transfer of the structured settlement was approved. Sanctions under Rule 1-011

apply to written pleadings. *See* Rule 1-011. Additionally, we reject Appellant's argument that the fact that all counsel stipulated to the charging lien precludes a determination that he intended to mislead the court regarding the charging lien. Similarly, we see no relevance to the fact that the district court initially signed an order approving the transfer of the structured settlement that incorporated Appellant's charging lien.

Based on our review of the record, the district court made specific findings supporting the decision to impose sanctions. Nothing in our review of the record or the memorandum in opposition indicates that these findings were not supported by the evidence or were otherwise an abuse of discretion. We therefore hold that the district court did not abuse its discretion in imposing sanctions for Appellant's assertion that he was entitled to a charging lien. *See Benavidez v. Benavidez*, 2006-NMCA-138, ¶ 19, 140 N.M. 637, 145 P.3d 117 (affirming the district court's imposition of Rule 1-011 sanctions where it did so based on findings of fact and conclusions of law supported by evidence in the record).

Additionally, we note that the district court's decision to impose sanctions under Rule 1-011 was based on Appellant's assertion in his petition to approve the transfer of the structured settlement that "[t]he asset represented by the structured settlement was bequeathed to Ms. Crow's estate and subject to a testamentary bequest

to [Beverly Kutzner]." **[RP 223]** The district court found that this statement was intentionally misleading and made for the purpose of inducing the court to believe that Ms. Kutzner was entitled to receive the annuity benefits. **[RP 223]** The district court found that, at the time he represented that Ms. Kutzner was entitled to receive the annuity benefits, Appellant was aware that her right to the annuity benefits was in dispute and had not yet been adjudicated in the open probate case. **[RP 223-24]** Appellant does not dispute these findings in either his docketing statement or his memorandum in opposition. We therefore hold that, under these circumstances, the district court did not abuse its discretion in imposing sanctions under Rule 1-011. *See Benavidez*, 2006-NMCA-138, ¶ 19.

**Good Grounds**

Finally Appellant argues that the trial court erred in denying Appellant's proposed finding and conclusion that he had good grounds to file the charging lien. **[MIO 6-10]** We disagree.

Rule 1-011 requires "that to the best of the signer's knowledge, information and belief there is good ground to support" any motion, pleading, or other paper submitted to the court. "In New Mexico courts, unlike in federal courts, the 'good ground' requirement is a subjective standard that 'depends on what the attorney or litigant knew and believed at the relevant time and involves the question of whether the

10

litigant or attorney was aware that a particular pleading should not have been brought.'" *Benavidez*, 2006-NMCA-138, ¶ 14 (quoting *Rivera*, 111 N.M. at 675, 808 P.2d at 960.

In this regard, the district court found that Appellant's "protestations that he thought . . . he was justified in claiming the lien as he did are simply not credible." **[RP 222]** Based on our review of the record, we see no indication that the district court's finding was an abuse of discretion.

"There are four elements to an attorney charging lien in New Mexico: (1) there must be a valid express or implied contract between the attorney and the client, (2) there must be 'a fund recovered by the attorney,' (3) notice of intent to assert a lien must be given, and (4) there must be a timely assertion of the lien." *Rangel*, 2006-NMCA-120, ¶ 13.

The district court determined, and Appellant does not appear to dispute, that the charging lien was not asserted against a "fund recovered by the attorney" because Appellant had nothing to do with obtaining the structured settlement on behalf of Megan Samsoe. Rather, the charging lien Appellant asserted in the probate matter against the structured settlement was for fees incurred representing Megan Samsoe in two criminal matters and for representing someone named Brandon Welborne in a

criminal matter. **[RP 133]** Appellant cites to no authority to support his claim that such a charging lien would be colorable under the law.

In his memorandum in opposition, Appellant argues that it was unreasonable for the district court to take the position that it thought the charging lien was for work done in the Megan Samsoe structured settlement case**. [MIO 9]** However, we disagree. Based on the fact that Appellant filed a charging lien in the transfer of structured settlement case, it was reasonable for the district court to believe that the charging lien was for work done to obtain the structured settlement, as a charging lien is only properly filed against "a fund recovered by the attorney." *See id.* We also understand that Appellant asserts that he subjectively believed he had good grounds to assert the charging lien because he obtained a benefit for Megan Samsoe during her life and that he had a legal obligation to refile the lien in the transfer of structured settlement case. **[MIO 7]** However, under these circumstances, we believe that Appellant's claim for a charging lien was so non-meritorious as to constitute a violation of Rule 1-011, notwithstanding his claim that he thought the charging lien was proper. *See Rangel*, 2006-NMCA-120, ¶ 14 (reviewing to determine whether a charging lien was so non-meritorious as to constitute a subjective willful violation of Rule 1-011).

For these reasons, we affirm the district court.

**IT IS SO ORDERED.**

_____
MICHAEL D. BUSTAMANTE, Judge

**WE CONCUR:**

_____
JAMES J. WECHSLER, Judge

_____
RODERICK T. KENNEDY, Judge