This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-36742**

**HORIZON WELL SERVICE, LLC,**

      Plaintiff-Appellant,

v.

**PEMCO OF NEW MEXICO, LLC,**

      Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF LEA COUNTY**
**Lee A. Kirksey, District Judge**

Law Offices of Gary C. Mitchell, P.C.
Gary C. Mitchell
Ruidoso, NM

Eric D. Dixon
Portales, NM

for Appellant

Hinkle Shanor LLP
Richard E. Olson
Chelsea R. Green
Roswell, NM

for Appellee

### MEMORANDUM OPINION

**MEDINA, Judge.**

**{1}** Horizon Well Services, LLC (Horizon) appeals the district court's final judgment on remand in favor of PEMCO of New Mexico, LLC (PEMCO). Horizon argues that the district court erred in concluding that: (1) Horizon failed to prove damages for lost

profits; (2) PEMCO did not engage in unfair practices; (3) Horizon is not entitled to punitive damages; and (4) Horizon owes PEMCO the remaining balance for its fabrication services. We affirm.

**BACKGROUND**

**{2}**   Horizon is an oil and gas well servicing company in southeastern New Mexico that provides swabbing services with specialized equipment known as a swabbing unit.[1] PEMCO provides large machine shop services for a number of oil field servicing companies in the Permian Basin and routinely repairs and maintains swabbing units. In 2010, Horizon hired PEMCO to fabricate a swabbing unit (Unit). Horizon agreed to pay $144,935.00 for fabrication and provided PEMCO with a truck chassis[2] on which to mount the Unit. Prior to completion, Horizon requested additional modifications to the Unit, increasing the total cost to $161,060.46. PEMCO delivered the completed Unit on March 24, 2011, and provided a one-year general warranty on the "parts that [PEMCO] fabricated and put on" the Unit.

**{3}**   Upon delivery, Horizon noticed the Unit vibrating during use and returned it to PEMCO in early April 2011 to address the vibration. PEMCO replaced the gearbox and worked on both the driveline and split shift box. In July 2011, the Unit's transmission failed. Horizon took the Unit to American Equipment (American), a heavy equipment and truck repair shop, to have the transmission repaired. American consulted with Watson Truck and Supply (Watson) and determined that the transmission needed to be replaced. Horizon purchased a new transmission for $6,289.12, and American installed it in the Unit. American also remachined the drivelines on the Unit to reduce vibration. Horizon paid American $2,471.79 for its services.

**{4}**   Despite these repairs, the Unit continued to vibrate. In late August 2011, Horizon returned the Unit to PEMCO. PEMCO reduced the angle of the transfer case and replaced damaged bolts and brackets. In September 2011, Horizon took the Unit to Watson because the Unit's transmission would not shift properly. During repair, Dan Wharf, Watson's operations manager, detected the same vibration issue and advised Horizon that the new transmission would fail if the vibration issue was not addressed. Instead of taking the Unit to PEMCO, Horizon continued using the Unit.

**{5}**   In mid-September 2011, Horizon took the Unit to PEMCO. While at PEMCO, Wharf was called in to inspect the transmission and he determined that it needed to be replaced. Wharf believed that the transmission failed due to driveline vibration likely caused by installation of the transfer case at too great an angle. PEMCO ordered a transmission from Watson and repositioned the transfer case to one-half or one degree. After these repairs the vibrations ceased and there were no further transmission failures. PEMCO's president, Gary Buie, told Wharf that PEMCO would pay for the new transmission. However, PEMCO later billed Horizon $8,578.76 for the replacement.

1A swabbing unit is a large rig built on a truck chassis used to remove fluids from gas wells. The unit has a winch with a cable and foldable mast with a pulley on top.
2The truck provided by Horizon is described as a "bare truck" with "200,000 miles on the engine."

**{6}**     Horizon filed suit against PEMCO for breach of contract, breach of warranty, and violations of the New Mexico Unfair Trade Practices Act (UPA). PEMCO counterclaimed for debt and money due, alleging that Horizon still owed $13,214.86 for the fabrication of the Unit and for the cost of replacing the second transmission. After a bench trial, the district court dismissed the complaint and counterclaim. This Court reversed the dismissal in *Horizon Well Serv., LLC v. PEMCO of N.M., LLC*, No. 33754, mem. op. (N.M. Ct. App. Dec. 30, 2015) (non-precedential) (*Horizon I*), and remanded for further proceedings. On remand, the parties stipulated to the district court's use of transcript testimony and exhibits from the first trial in the "retrial/reconsideration" of the remaining claims. After reviewing testimony and exhibits, the district court concluded in part:

11.     [PEMCO] breached its express one[-]year warranty to Horizon[;]

. . . .

14.     The exhibits and testimony . . . as to the lost profits or down time of the . . . [U]nit while in the repair shops were speculative and vague[;]

. . . .

17.     Horizon's claim for damages resulting from lost profits or down time is dismissed because it has not been proven with reasonable certainty[;]

. . . .

19.     Horizon has failed to establish that [PEMCO] or its agents knowingly made any false or misleading representation with regard to the fabrication of the . . . [U]nit at issue or [PEMCO's] ability to fabricate a swabbing unit[;]

. . . .

21.     Horizon's claim for unfair trade practices by [PEMCO] is dismissed[;]

. . . .

23.     Horizon failed to provide any evidence that [PEMCO's] actions were malicious, willful, reckless, wanton, fraudulent, or in bad faith[;]

24.     Horizon's claim for punitive damages is denied.

The district court awarded Horizon $10,039.02 in consequential damages and awarded PEMCO $13,214.46 for the remaining balance due for fabricating the Unit. This appeal followed.

**DISCUSSION**

**Standard of Review**

**{7}** While Horizon raises several different arguments, each assert that the district court erred as a matter of law. "When a party is challenging a legal conclusion, the standard for review is whether the law correctly was applied to the facts." *Benavidez v. Benavidez*, 2006-NMCA-138, ¶ 21, 140 N.M. 637, 145 P.3d 117 (internal quotation marks and citation omitted). "We are deferential to facts found by the district court, but we review conclusions of law de novo." *Id.*

**I.      Horizon Failed to Establish Lost Profits With Reasonable Certainty**

**{8}** Horizon contends the district court erred in concluding that Horizon failed to establish damages for lost profits resulting from a breach of express warranty. Specifically, Horizon argues that testimony regarding its inability to bill for use of the Unit at a rate of $2,000 a day while the Unit was under repair and unavailable for a period of twenty-two days was sufficient to establish lost profits.

**{9}** "A plaintiff with damages measured by lost profits has the burden of providing a sufficient evidentiary basis to determine damages, including proof of overhead or other costs or expenses in addition to gross profit." *Cent. Sec. & Alarm Co. v. Mehler*, 1996-NMCA-060, ¶ 21, 121 N.M. 840, 918 P.2d 1340. "Where a legal right to damages exists for breach of contract, the fact that lost profits may not be computed with exact mathematical certainty does not prevent the plaintiff from submitting the issue to the fact[-]finder." *Ranchers Expl. & Dev. Corp. v. Miles*, 1985-NMSC-019, ¶ 5, 102 N.M. 387, 696 P.2d 475. However, proof of the amount of damages "cannot be based upon surmise, conjecture, or speculation." *Mehler*, 1996-NMCA-060, ¶ 22. "[W]hen it is possible to present accurate evidence on the amount of damages, the party upon whom the burden rests to prove damages must present such evidence." *First Nat'l Bank in Albuquerque v. Sanchez*, 1991-NMSC-065, ¶ 18, 112 N.M. 317, 815 P.2d 613 "In cases where profit is the inducement to making a contract, damages for lost profits are allowed *if proven*, and such damages are defeated only where there is uncertainty as to the cause of damage rather than the amount of damage." *Miles*, 1985-NMSC-019, ¶ 5 (emphasis added).

**{10}** Here, the district court found among other things that "[t]he exhibits and testimony . . . as to lost profits or down time of the swabbing unit while in the repair shops were speculative and vague." We agree. In support of its claim for lost profits, Horizon's owner, Bret Abernathy, testified that during the summer the Unit worked an average of twelve to fourteen hours a day at a rate of one hundred-sixty-five dollars an hour, plus "add-ons." Using Abernathy's estimate for each day the Unit was down, Horizon sought a total of $44,000 in lost profit damages. However, Horizon did not present evidence of any specific jobs lost while the Unit was being repaired.

**{11}** Our Supreme Court addressed a similar issue in *Herzog Contracting Corp. v. A & S Construction Co.*, where an asphalt paving company's claim for lost-profit damages was denied for lack of proof. 1988-NMSC-022, ¶¶ 7-9, 107 N.M. 6, 751 P.2d 690. In *Herzog*, the plaintiff sued for breach of contract and sought lost-profit damages in excess of profits expected under the terms of the contract. *Id.* ¶ 5. In support of its claim for lost profits, the plaintiff proffered two alternative theories "overhead earned," and (2) "lost rental value" asserting that it lost approximately $100,000 per month for a period of eight and one-half months due to delay caused by the defendant's breach. *Id.* ¶ 6. Although the district court determined that the defendant breached the contract, it only awarded damages provided for by the contract, because the plaintiff "was unable to demonstrate that it missed or failed to bid for any other job opportunity." *Id.* ¶¶ 1, 7. Citing the lack of evidence showing lost job opportunities, our Supreme Court affirmed the district court's findings, and concluded that "[the plaintiff] failed to meet the most basic requirement of achieving its damages, namely proof based on a reasonable certainty both as to the allowance of damages and as to the amount." *Id.* ¶ 9 (emphasis omitted). Similar to the plaintiff in *Herzog*, Horizon failed to provide evidence of lost job opportunities. Without such evidence the district court was only presented with Abernathy's estimate of potential lost profits.

**{12}** Although Abernathy estimated that the Unit operated twelve to fourteen hours a day and gave a base hourly charge, if we were to calculate lost profits as Horizon suggests, the resulting $44,000 figure appears to represent *gross income*, and awarding a gross figure for lost profits would result in a windfall for Horizon. *See Mehler*, 1996-NMCA-060, ¶ 18 (concluding that awarding a gross figure without deduction of additional expenses would give the plaintiff "a windfall and would be contrary to the principle of compensatory damages"). Abernathy estimated that out of the hourly rate charged, Horizon paid two workers at $12 and $24 an hour respectively, plus overtime, but could not confirm the actual rates. After reviewing payroll documentation, Abernathy stated that Horizon paid the two workers $6,600 and that that figure had been "taken off" of the damages estimate. Yet, the $44,000 lost-profit estimate does not appear to reflect such a reduction for labor.

**{13}** Additionally, Abernathy could not account for fuel costs or workers' compensation premiums paid during the twenty-two-day period. Nor did Abernathy testify to other overhead expenses, such as insurance for the Unit itself, which would necessarily reduce the profits Horizon ultimately realizes. Because these costs are unknown, any estimate of Horizon's net profit for the twenty-two-day period would be speculative at best. *Compare Mascarenas v. Jaramillo*, 1991-NMSC-014, ¶¶ 21-22, 111 N.M. 410, 806 P.2d 59 (upholding the district court's denial of lost profits as imprecise where no evidence was presented to show prospective tenants or fair rental value), *and Deaton, Inc. v. Aeroglide Corp.*, 1982-NMSC-147, ¶ 20, 99 N.M. 253, 657 P.2d 109 (concluding that lost-profit damages award was too speculative to be upheld where proof of potential buyers or business costs were not produced), *with Manouchehri*, 1997-NMCA-052, ¶¶ 17, 26 (holding that a dentist's testimony was sufficient, without documentary corroboration, to establish lost profits under the circumstances where he testified as to cost, billing rate, and average number of X-rays he would have taken each month if the

machine at issue were not inadequate for its purpose). Accordingly, we hold that the district court properly determined that Horizon failed to prove lost profits.

**{14}** To the extent Horizon contends its lost-profit calculations include loan payments, Horizon does not develop this argument or explain how or why loan payments should be considered as anything other than costs to be deducted from profits. We, therefore, decline to address the issue. *See Corona v. Corona*, 2014-NMCA-071, ¶ 28, 329 P.3d 701 ("This Court has no duty to review an argument that is not adequately developed.").[3]

## II.     PEMCO Did Not Violate the UPA

**{15}** Horizon next argues the district court erred by concluding, as a matter of law, that PEMCO did not violate the UPA, NMSA 1978, §§ 57-12-1 to -26 (1967, as amended through 2019). In asserting this claim, Horizon disputes the district court's factual findings contending that PEMCO knowingly misrepresented its expertise, the nature of plans used to fabricate the Unit, and that fabrication would be completed in a timely manner.[4] PEMCO argues that it appropriately represented its ability to construct swabbing units, and that the issues in this case do not rise above a breach of warranty.

**{16}** Four elements must be established to invoke the UPA: (1) "the complaining party must show that the party charged made an oral or written statement, visual description or other representation' that was either false or misleading;" (2) "the false or misleading representation must have been knowingly made in connection with the sale, lease, rental or loan of goods or services in the extension of credit or  collection of debts;" (3) "the conduct complained of must have occurred in the regular course of the representer's trade or commerce;" and (4) "the representation must have been of the type that may, tends to or does, deceive or mislead any person." *Stevenson v. Louis Dreyfus Corp.*, 1991-NMSC-051, ¶ 13, 112 N.M. 97, 811P.2d 1308 (omission, internal quotation marks, and citations omitted). As relevant to this case, "[t]he 'knowingly made' requirement is met if a party was actually aware that the statement was false or misleading when made, or in the exercise of reasonable diligence should have been aware that the statement was false or misleading." *Id.* ¶ 17.

**{17}** The district court found that "Horizon failed to establish that [PEMCO] or its agents knowingly made any false or misleading representation with regard to the fabrication of the swabbing unit at issue or [PEMCO's] ability to fabricate a swabbing

---

3Given our holding that the district court properly determined that Horizon failed to prove lost profits, we need not address Horizon's claim that the district court erred in concluding that it failed to mitigate its damages for lost profits. *See Sheraden v. Black*, 1988-NMCA-016, ¶ 10, 107 N.M. 76, 752 P.2d 791 ("It is well settled in New Mexico that the function of a reviewing court on appeal is to correct erroneous results, not to correct errors that, even if corrected, would not change the result.").

4In its brief in chief, Horizon sets out five paragraphs of case law addressing the UPA but does not develop a specific argument as to its claim of error or establish how the facts of this case amount to a UPA violation. Ordinarily, we need not address Horizon's argument further, however, PEMCO's answer brief addressed UPA issues not raised in the brief in chief. Horizon in turn provided limited argument in its reply. We therefore briefly address arguments made in Horizon's reply.

unit." Horizon disputes these findings by directing us to evidence that PEMCO: (1) did not generally build swabbing units; (2) only manufactured five swabbing units over a thirty-year period; (3) had not built a swabbing unit for five years prior to building the Unit at issue; and (4) did not use plans designed by an engineer but rather hand-drawn plans created by Buie and his father-in-law.

**{18}** Horizon does not discuss relevant case law or develop arguments as to why these facts show that PEMCO knowingly misrepresented its expertise other than to say that "the rig was not manufactured in a proper manner[.]" Conversely, the following evidence reveals that Horizon was aware that PEMCO did not regularly build swabbing units and had not done so in some time. Buie testified that he discussed with Abernathy the fact that PEMCO did not regularly fabricate swabbing units and that it had not done so recently. Abernathy similarly testified that he was aware PEMCO had not constructed a swabbing unit for a number of years.

**{19}** Further, although Abernathy testified that Horizon would not have agreed to the use of handwritten plans, without further development these facts alone do not establish a knowing misstatement or omission. Horizon was aware that PEMCO intended to use its own plans and had declined to take measurements of Horizon's other swabbing unit. Finally, Horizon also fails to establish a connection between established case law and delivery of the Unit after the projected completion date sufficient to demonstrate a UPA violation. Considering the evidence presented and giving deference to the district court's factual finding, *Benavidez*, 2006-NMCA-138, ¶ 21, and applicable law, we conclude that the district court properly determined that PEMCO did not violate the UPA.

### III. Horizon Failed to Establish That Punitive Damages Were Warranted

**{20}** Horizon argues that the district court erred in denying punitive damages.[5] Horizon contends it was entitled to punitive damages because PEMCO misrepresented its expertise and the nature of the swabbing unit plans. PEMCO responds that the evidence was insufficient to support Horizon's claim for punitive damages. The district court found that Horizon "failed to provide any evidence that [PEMCO's] actions were malicious, willful, reckless, wanton, fraudulent, or in bad faith[]" and denied Horizon's punitive damages claim. We agree.

**{21}** "Absent proof that the conduct of a party resulting in a breach of contract was malicious, fraudulent, oppressive, or recklessly committed, with a wanton disregard of the other party's rights, an award of punitive damages is improper." *Jones v. Lee*, 1999-NMCA-008, ¶ 26, 126 N.M. 467, 971 P.2d 858. "Evidence of a culpable mental state is required because the purpose of punitive damages is to punish such conduct and to deter others from similar conduct." *Albuquerque Concrete Coring Co., Inc. v. Pan Am. World Servs., Inc.*, 1994-NMSC-078, ¶ 9, 118 N.M. 140, 879 P.2d 772. "A mental state sufficient to support an award of punitive damages will exist when the defendant acts

---

[5] Horizon also argues the district court erred in denying treble damages under the UPA. Because we conclude that the district court correctly determined that PEMCO did not violate the UPA, we need not address this argument.

with reckless disregard for the rights of the plaintiff—i.e., when the defendant knows of potential harm to the interests of the plaintiff but nonetheless utterly fails to exercise care to avoid the harm." *Paiz v. State Farm Fire & Cas. Co.*, 1994-NMSC-079, ¶ 26, 118 N.M. 203, 880 P.2d 300 (alteration, internal quotation marks, and citation omitted). "Thus, absent a showing that the breaching party intended to inflict harm on the non-breaching party or conduct which violates community standards of decency, the actions of the breaching party will not serve as a basis for an award of punitive damages." *Jones*, 1999-NMCA-008, ¶ 26.

**{22}** Horizon relies on the same evidence to support its punitive damages claim as cited in its UPA argument. However, Horizon again fails to establish facts sufficient to show that PEMCO's actions warrant an award of punitive damages. There is no evidence indicating that PEMCO intended to harm Horizon. As discussed above, the evidence presented reveals that PEMCO accurately informed Horizon of its limited fabrication experience and that it intended to use its own plans. Likewise, the evidence does not indicate that PEMCO acted with reckless disregard for Horizon's rights. Indeed, Abernathy testified that PEMCO appeared concerned that the issues were causing Horizon to lose customers and that Buie said "he was doing everything he [could]." To the extent Horizon argues that PEMCO's decision to wait for delivery of a part for the Unit rather than drive to Texas to pick it up sooner supports an award of punitive damages, Horizon does not explain how PEMCO's decision rises to a level of reckless disregard for Horizon's rights under the contract sufficient to warrant punitive damages. Without evidence that PEMCO's conduct was malicious, fraudulent, oppressive, or recklessly committed, with a wanton disregard of Horizon's rights, the district court properly denied punitive damages.

## IV.    The District Court Properly Awarded PEMCO the Remaining Balance  for Fabrication

**{23}** Lastly, Horizon challenges the district court's award of the remaining fabrication costs under a theory of waiver by estoppel. According to Horizon, PEMCO both expressly waved the outstanding balance for fabrication, and implicitly waved the balance when it paid for a transmission replacement. PEMCO asserts that it never waived the outstanding balance for fabrication.

**{24}** "Generally, New Mexico cases have defined waiver as the intentional relinquishment or abandonment of a known right." *JR Hale Contracting Co. Inc. v. United N.M. Bank at Albuquerque*, 1990-NMSC-089, ¶ 12, 110 N.M. 712, 799 P.2d 581. Relying on Abernathy's testimony, that Mr. Bui told him not to worry about the final bill, Horizon contends that PEMCO's president waved the outstanding balance for fabrication of the Unit. In doing so, Horizon discounts contrary testimony from PEMCO's office manager and ignores Buie's testimony in which he denied waving the remaining balance.

**{25}** The district court, sitting as fact-finder, appears to have weighed the conflicting evidence in making its findings and conclusions. Although Horizon asserts that this

Court is in as good a position to weigh the documentary evidence presented in this case, we emphasize that we " 'will not disturb the [district court's findings] upon conflicting evidence unless such findings are manifestly wrong or clearly opposed to the evidence.' " *United Nuclear Corp. v. Gen. Atomic Co.*, 1979-NMSC-036, ¶ 62, 93 N.M. 105, 597 P.2d 290 (quoting *Valdez v. Salazar*, 1940-NMSC-079, ¶ 17, 45 N.M. 1, 107 P.2d 862). After reviewing the evidence in this case, we cannot say that the district court's findings are manifestly wrong or opposed to the evidence. Buie's testimony as well as testimony from PEMCO's office manager supports a conclusion that PEMCO did not expressly waive the outstanding balance owed on the Unit. *See id.* ¶ 69 (affirming the district court's finding after reviewing documentary evidence).

**{26}**　Horizon also argues that PEMCO implicitly waived the balance when it paid for a transmission replacement. "[T]he intent to waive contractual obligations or conditions may be implied from a party's representations that fall short of an express declaration of waiver, or from his conduct." *JR Hale Contracting Co. Inc.*, 1990-NMSC-089, ¶ 11. "To prove waiver by estoppel the party need only show that he was misled to his prejudice by the conduct of the other party into the honest and reasonable belief that such waiver was intended." *Id.* ¶ 12. (footnote omitted). The following facts must be established to support a claim of waiver by estoppel: "(1) the party to be estopped made a misleading representation by conduct; (2) the party claiming estoppel had an honest and reasonable belief based on the conduct that the party to be estopped would not assert a certain right under the contract; and (3) the party claiming estoppel acted in reliance on the conduct to its detriment or prejudice." *Palenick v. City of Rio Rancho*, 2013-NMSC-029, ¶ 14, 306 P.3d 447 (internal quotation marks and citation omitted).

**{27}**　Even assuming PEMCO made a misleading representation by conduct, Horizon fails to establish that its belief was reasonable. While Horizon generally asserts that it reasonably believed PEMCO's payment for a transmission implicitly waived the outstanding balance for fabrication, it fails to develop a sufficient factual basis to show why its belief was reasonable. In *JR Hale Contracting Co. Inc.*, our Supreme Court addressed whether sufficient evidence of waiver by estoppel was presented to create an issue of fact for the jury. 1990-NMSC-089, ¶ 23. In that case, the plaintiff argued that its prior experience with the bank created a reasonable belief that it would not assert its right to declare a default without first notifying the company and providing an opportunity to cure. *See id.* ¶ 24. Because the bank had previously accepted late payment without comment in other transactions and had not mentioned the past-due payment at issue when it met with the plaintiff, our Supreme Court determined that there was sufficient evidence to present the question of whether the company's belief was reasonable to the jury. *Id.* The Court reasoned "that the previous course of dealings between the parties is relevant to show the meaning that the company reasonably might attribute to the bank's conduct[.]" *Id.* ¶ 23. In contrast, Horizon presented no evidence of past dealings with PEMCO illustrating why Horizon could reasonably believe that PEMCO implicitly waived Horizon's outstanding debt.

**{28}**　Horizon also fails to point to any evidence or develop any argument as to how its alleged reliance was to its detriment or prejudice. While it is reasonable to infer that

Horizon's reliance led to its failure to make payments, it is unclear whether PEMCO took any collection action against Horizon prior to its counterclaim in this action. There is no other evidence that Horizon suffered detriment or prejudice as a result of its failure to pay the outstanding balance for PEMCO's fabrication services. Applying the law to these facts, the district court properly concluded that Horizon owes the remaining balance.

**CONCLUSION**

**{29}** For the foregoing reasons, we affirm.

**{30}** **IT IS SO ORDERED.**

**JACQUELINE R. MEDINA, Judge**

**WE CONCUR:**

**BRIANA H. ZAMORA, Judge**

**MEGAN P. DUFFY, Judge**