This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**JOAN BLUMENSHINE f/k/a**
**JOAN RUPERT and CATHY PEARSON,**

Petitioners/Plaintiffs-Appellants,

v.                                              **NOS. 34,308 & 34,398**
                                                **(Consolidated)**

**PAUL KASTLER and EDWARD PEASE,**
**Individually and as Trustees of the GRETCHEN**
**SAMMIS REVOCABLE TRUST DATED**
**JANUARY 1, 2004, and as Officers of THE**
**CHASE RANCH CHARITABLE FOUNDATION,**
**a New Mexico Nonprofit Corporation, THE ESTATE**
**OF GRETCHEN ANN SAMMIS, THE GRETCHEN**
**SAMMIS REVOCABLE TRUST DATED JANUARY**
**1, 2004, and THE CHASE RANCH CHARITABLE**
**FOUNDATION,**

Respondents/Defendants-Appellees,

and

**JOAN BLUMENSHINE f/k/a**
**JOAN RUPERT and CATHY PEARSON,**

Petitioners/Plaintiffs-Appellants,

v.                                              **NO. 35,032**

**PAUL KASTLER and EDWARD PEASE**

**Individually and as Trustees of the GRETCHEN SAMMIS REVOCABLE TRUST DATED JANUARY 1, 2004, and as Officers of THE CHASE RANCH CHARITABLE FOUNDATION, a New Mexico Nonprofit Corporation, THE ESTATE OF GRETCHEN ANN SAMMIS, THE GRETCHEN SAMMIS REVOCABLE TRUST DATED JANUARY 1, 2004, and THE CHASE RANCH CHARITABLE FOUNDATION,**

Respondents/Defendants-Appellees.

**APPEAL FROM THE DISTRICT COURT OF COLFAX COUNTY**
**Sarah C. Backus, District Judge**

Alex Chisholm
Albuquerque, NM

for Appellants

Alsup Law Office
Gary D. Alsup
Clayton, NM

Montgomery & Andrews, P.A.
Seth C. McMillan
Santa Fe, NM

for Appellees

## MEMORANDUM OPINION

**VANZI, Judge.**

{1}     This is a consolidated case concerning three separate appeals from a single district court case that involves the distribution of trust and will assets. Joan Blumenshine and Cathy Pearson (collectively, Petitioners) appeal the district court's

dismissal of Pearson on the ground that she lacked standing; the district court's award of summary judgment against Blumenshine; and the district court's imposition of Rule 1-011 NMRA sanctions on Petitioners and their counsel for filing a frivolous lawsuit.

{2}     We hold that the district court did not err when it dismissed Pearson for lack of standing because the New Mexico Uniform Probate Code (UPC), NMSA 1978, Sections 45-1-101 to -9A-13 (1975, as amended through 2016), does not confer standing to her; the district court did not err in granting summary judgment against Blumenshine because she did not dispute any material facts and judgment was proper as a matter of law; and the district court did not abuse its discretion in imposing Rule 1-011 sanctions because Petitioners and their counsel had no facts supporting the allegations and claims of the verified complaints at the time of filing. Therefore, we affirm.

**BACKGROUND**

{3}     This appeal pertains to a ranch in northern New Mexico that is the subject of a will and trust dispute. Gretchen Sammis was the great-granddaughter of Manly Chase, who established the ranch in the nineteenth century. In the 1880s, Chase purchased land in Colfax County, New Mexico that was originally part of the Maxwell Land Grant. Chase then expanded his land by a series of additional purchases and passed down his interest in the land to his heirs by testamentary devise. Today, these lands are known as the Chase Ranch and are located four miles northeast

of Cimarron, New Mexico. In 1954, the Chase Ranch was conveyed to Sammis and Sammis' half-sister, Blumenshine. In 1960, Sammis consolidated her interest in the Chase Ranch by purchasing Blumenshine's 50 percent interest in the property, excluding mineral rights. Over the course of thirty-two years, Sammis executed numerous wills, each of which acknowledged Blumenshine as her sister, but none of which included any provisions that left Blumenshine anything. The wills stated that Sammis never married and had no children.

{4}     On January 16, 2004, Sammis executed her Last Will and Testament, which revoked all her previous wills and devised all her personal and real property to the Gretchen Sammis Revocable Trust (Trust). The Trust was also executed in January 2004. The Trust's purpose was to "have the Chase Ranch retained as an historic ranch and museum." Sammis nominated Paul Kastler, Edward Pease (collectively, Respondents), and Ruby Nell Gobble, as co-personal representatives and co-trustees of both the will and the Trust. Kastler was Sammis' long-time attorney, Pease was Sammis' personal acquaintance, and Gobble was Sammis' good friend. Pearson was named as an alternate trustee.

{5}     In her final will, Sammis directed that her personal representatives should devise her personal property, including jewelry and silver, to the Trust. Sammis also instructed that "all such tangible personal property be distributed by [her] Personal Representative pursuant to a written statement or list prepared by [her] in [her] own

4

handwriting, or signed by [her], which list shall control to the extent that it disposes of [her] tangible personal property." At the time of her death, Sammis left behind two signed handwritten statements. One was dated August 20, 1995, and stated, "My intention is to have the Chase Ranch house, barns, shed, shops and everything they contain remain <u>intact</u>. The only things that may be removed will be listed below." Sammis gave the "Maupin silver and all other pieces to [Blumenshine]." The other signed handwritten statement was dated August 19, 1997, and stated, "[Blumenshine] can distribute the jewelry."

{6}     In addition, Sammis' will devised her residuary estate to the Chase Ranch Charitable Foundation (Foundation), which was established in 2001. The purpose of the Foundation was to operate and enhance "the Historic Chase Ranch . . . for historic, educational, sociological, cultural and Southwestern United States and New Mexican historic ranch and museum purposes." Respondents were named co-directors of the Foundation.

{7}     Sammis died on August 14, 2012, and on September 6, 2012, Respondents and Gobble applied for informal probate. Pearson—Blumenshine's daughter and Sammis' niece—was listed as "Niece/Devisee" in the application for probate. Kastler later admitted that the inclusion of Pearson was a mistake because she was not named as a devisee in Sammis' will or in the two handwritten statements. Blumenshine, on the other hand, was properly listed as "Sister/Devisee" in the application.

5

{8}     Petitioners filed a complaint on September 6, 2013, in the district court alleging that Respondents committed conversion by "convincing [Sammis] to create the . . . Foundation[] and the . . . Trust." Petitioners also alleged that Respondents engaged in tortious interference with an expected inheritance, claiming Petitioners had an "expectancy that the Chase [R]anch would be left to one or both of them" based on an oral agreement between Sammis and Blumenshine. In addition, Petitioners asked the district court to set aside Sammis' Last Will and Testament and sought an adjudication of intestacy based on undue influence. Petitioners specifically argued that Respondents "used their position of trust and their confidential and fiduciary relationship with [Sammis] to convince her to abandon her heritage and her obligation to keep the Chase [R]anch in the family." Respondents denied Petitioners' allegations and filed a motion to dismiss Pearson as a party for lack of standing. Respondents also filed a motion for summary judgment on all claims.

{9}     On October 9, 2014, the district court held a motions hearing during which counsel for Petitioners conceded that "it just boils down to conversion." Counsel for Petitioners also asserted that the case had been reduced to the property claims. When asked whether Petitioners were abandoning their tortious interference with an expected inheritance claim, counsel responded in the affirmative. Likewise, when the court inquired as to whether Petitioners were abandoning the undue influence claim,

counsel said that the claim no longer had any bearing. The district court granted Respondents' motion to dismiss Pearson and their motion for summary judgment.

{10} Subsequently, Respondents brought a Rule 1-011 motion for sanctions against Petitioners and their attorney, alleging the complaint was "groundless" and "frivolous." The district court agreed with Respondents and granted the motion, making numerous findings that Petitioners' allegations were not supported by facts and expressly concluding that a "large number of the allegations in [Petitioners'] verified complaint are simply mean and scandalous and appear calculated to inflict embarrassment and harm" to Respondents' reputation. While the court found Petitioners and their counsel in violation of Rule 1-011, it did not quantify the amount of damages.

{11} Although the parties and case below were the same, Petitioners filed three separate appeals to this Court pertaining to (1) the dismissal of Pearson on the ground that she lacked standing, (2) the order granting summary judgment to Respondents, and (3) the district court's imposition of Rule 1-011 sanctions. We have consolidated the three appeals and address all the issues raised in this opinion.

**DISCUSSION**

**Standing**

{12}     We begin with the threshold question of whether the district court erred when it dismissed Pearson for lack of standing. Petitioners argue that various provisions of the UPC give Pearson standing because she is an heir to Sammis, she was listed as a devisee in the application for informal probate, and she was named as a successor co-trustee. Petitioners further argue that the doctrine of judicial estoppel bars Respondents from asserting that Pearson was not a devisee. We disagree and address each of Petitioners' arguments in turn.

{13}     "Whether a party has standing to bring a claim is a question of law which we review de novo. For purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *N.M. Gamefowl Ass'n v. State ex rel. King*, 2009-NMCA-088, ¶ 12, 146 N.M. 758, 215 P.3d 67 (internal quotation marks and citations omitted).

{14}     Petitioners first argue that Pearson has standing to sue because she is an interested person as defined in Sections 45-3-203A(3), (5), and (6) of the UPC. Contrary to Petitioners' assertion, however, Pearson does not meet the definition of an interested person and, therefore, does not have standing in this case. We explain.

{15}     Under New Mexico's codification of the UPC, an "interested person" in a probate matter "includes heirs, devisees, children, spouses, creditors, beneficiaries and any others having a property right in or claim against a trust estate or the estate of a

8

decedent[.]" Section 45-1-201(A)(26). The term "interested person" also includes persons who have a "priority for appointment as personal representatives and other fiduciaries representing interested persons." *Id.* Further, the Legislature has defined the term "devisee" as "a person designated in a will to receive a devise." Section 45-1-201(A)(11).

{16}    Petitioners' contention that Pearson is an heir to Sammis fails. "Heirs" are persons "who are entitled under the statutes of intestate succession to the property of a decedent." Section 45-1-201(A)(23). Under Section 45-2-103(A)(1), (2), an individual is entitled to an intestate share of a decedent's estate if such an individual is a descendant of the decedent or a parent of the decedent. In the event there are no surviving descendants or parents, the intestate share passes to the descendants of the decedent's parents. Section 45-2-103(A)(3). Here, Pearson is neither a descendent entitled to an estate share or a parent of Sammis, nor is she a descendant of Sammis' parents. *See* § 45-2-103(A). Rather, she is Blumenshine's daughter and Sammis' niece. Pursuant to the plain language of the UPC set forth above, Pearson is not an heir and is not entitled to an intestate share of Sammis' estate. *See id.*

{17}    Petitioners also argue that Section 45-3-108(A)(3) confers standing to Pearson. That provision of the UPC provides, "No informal probate or appointment proceeding or formal testacy or appointment proceeding . . . may be commenced more than three years after the decedent's death, except . . . a proceeding to contest an informally

9

probated will and to secure appointment of the person with legal priority for appointment." *Id.* This provision is merely a limitations statute and does not operate to confer standing on Pearson. *See id.*; *Vieira v. Estate of Cantu*, 1997-NMCA-042, ¶ 11, 123 N.M. 342, 940 P.2d 190 (discussing whether a petition under Section 45-3-108(A)(3) was timely filed).

{18}     Petitioners additionally claim that Pearson is granted standing by virtue of Section 45-3-203. However, Petitioners misconstrue this section because it applies to "[p]riority among persons seeking appointment as personal representative" and does not confer standing. *See id.* In any event, Section 45-3-203 does not apply to Pearson because she does not fall into the category of persons that would have priority under the UPC. *See* § 45-3-203(A) (giving priority to "(1) the person with priority as determined by a probated will, including a person nominated by a power conferred in a will; (2) the surviving spouse of the decedent who is a devisee of the decedent; (3) other devisees of the decedent; (4) the surviving spouse of the decedent; (5) other heirs of the decedent; and (6) on application or petition of an interested person other than a spouse, devisee or heir, any qualified person").

{19}     As to Petitioners' argument that Pearson was conferred standing because she was mistakenly listed as a devisee in the application for informal probate, we are not persuaded. Nothing in the UPC provides that simply naming someone as a devisee in an application for informal probate unilaterally bestows the title of "devisee" on that

10

individual. *See* § 45-1-201(A)(11). Indeed, as we have already explained, standing requires one to be named in a will as a devisee or to be otherwise entitled under the statutes of intestacy. *See* § 45-1-201(A)(11), (23). Pearson was not named in the will and cannot demonstrate that she is otherwise entitled to bring this suit under any other provision of the UPC.

{20} Petitioners also assert that Pearson has standing because she was named as a successor co-trustee, but they put forth no specific arguments or law to support this claim. Importantly, we note as well that there is no evidence in the record that Pearson was a successor trustee and that she was only named as an alternate trustee in the Trust. This Court has no duty to review an argument that is not adequately developed. *See Curry v. Great Nw. Ins. Co.*, 2014-NMCA-031, ¶ 28, 320 P.3d 482 ("Where a party cites no authority to support an argument, we may assume no such authority exists."); *Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076 (declining to entertain a cursory argument that included no explanation of the party's argument and no facts that would allow the appellate court to evaluate the claim).

{21} To the extent Petitioners argue that Pearson has standing under the Uniform Trust Code (UTC), NMSA 1978, § 46A-6-604(A) (2007), we disagree. That provision states:

A person may commence a judicial proceeding to contest the validity of a trust that was revocable at the settlor's death within the earlier of:

(1)    three years after the settlor's death; or

(2)    one hundred twenty days after the trustee sent the person a copy of the trust instrument and a notice informing the person of the trust's existence, of the trustee's name and address and of the time allowed for commencing a proceeding.

*Id.*

{22}    As with Section 45-3-108(A)(3) of the UPC, this provision concerns the statute of limitations to contest the validity of a trust and does not operate to confer standing to Pearson. *Cf. McNeill v. Rice Eng'g & Operating, Inc.*, 2010-NMSC-015, ¶ 1, 148 N.M. 16, 229 P.3d 489 (holding that, in a trespass action, while discovery of the trespass causes the statute of limitations to run, discovery of the trespass itself does not give standing to the aggrieved party). In any case, neither party argues to this Court that the limitations period had run on Pearson's alleged claims.

{23}    We agree with Respondents that any challenge to the Trust should be viewed through the lens of the UPC. The UTC applies to "express trusts," such as the one at issue here. *See* NMSA 1978, § 46A-1-102 (2003). The UTC, however, does not define the term "interested person" or give guidance on when a person has a cause of action under that statute. *See* Uniform Trust Code, NMSA 1978, §§ 46A-1-101 to -11-1105 (2003, as amended through 2016). We therefore look to the UPC for illumination. *See*

*Oldham v. Oldham*, 2011-NMSC-007, ¶ 11, 149 N.M. 215, 247 P.3d 736 ("A statutory subsection may not be considered in a vacuum, but must be considered in reference to the statute as a whole and in reference to statutes dealing with the same general subject matter." (alteration, internal quotation marks, and citation omitted)). Our Supreme Court has held that "[s]tatutes covering the same subject matter should be harmonized and construed together when possible in a way that facilitates their operation and the achievement of their goals." *Id.* (internal quotation marks and citation omitted).

{24}     Section 45-1-301(A)(1) of the UPC applies to "the affairs and estates of decedents[.]" Because Sammis' final will and Trust "represent a unified estate plan" and concern the same subject matter (Sammis' estate), the UPC properly applies. *See Wilson v. Fritschy*, 2002-NMCA-105, ¶ 27, 132 N.M. 785, 55 P.3d 997 ("[T]rusts related to estates are undeniably within the sweep of the [UPC]."). As previously discussed, the UPC defines an "interested person" as someone who has a "property right in or claim against a trust estate." Section 45-1-201(A)(26). As also detailed above, the intestacy laws set forth the standards for establishing who—in the absence of being a spouse, heir, child, beneficiary, or creditor—has standing to contest a will or the validity of a trust. *See id.*; § 45-2-101(A) ("Any part of a decedent's estate not effectively disposed of by will passes by intestate succession."). Because Pearson does

13

not have an interest in the intestate estate, *see* § 45-2-103, she does not have a property interest or claim against the trust estate under the UPC.

**{25}** Finally, as to Petitioners' contention that judicial estoppel bars Respondents from asserting that Pearson was not a devisee, we are likewise unpersuaded. "Judicial estoppel is a doctrine that prevents a party who has successfully assumed a certain position in judicial proceedings from then assuming an inconsistent position[.]" *Rodriguez v. La Mesilla Constr. Co.*, 1997-NMCA-062, ¶ 20, 123 N.M. 489, 943 P.2d 136. There is nothing in the present case to suggest that Respondents assumed an inconsistent position with one that was successfully assumed before. *See id.* As Petitioners have cited no authority for the proposition that mistakenly listing someone as a devisee in an application for informal probate is tantamount to assuming a position in litigation, we assume no such authority exists. *See Curry*, 2014-NMCA-031, ¶ 28 ("Where a party cites no authority to support an argument, we may assume no such authority exists."). Moreover, it cannot be said that Respondents were successful in arguing for one position and then later argued for an inconsistent position because they never sought to name Pearson as a devisee to their advantage. *See Keith v. ManorCare, Inc.*, 2009-NMCA-119, ¶ 39, 147 N.M. 209, 218 P.3d 1257 ("The primary purpose of the judicial estoppel rule is to prevent parties from playing fast and loose with the court by *successfully* arguing one position and then later adopting a position inconsistent with the first." (internal quotation marks and citation

14

omitted)). As such, the doctrine of judicial estoppel is of no moment to this case. Accordingly, we affirm the district court's dismissal of Pearson for lack of standing.

**Summary Judgment**

{26}   "Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Self v. United Parcel Serv., Inc.*, 1998-NMSC-046, ¶ 6, 126 N.M. 396, 970 P.2d 582. The appellate courts "review these legal questions de novo." *Id.* A party opposing summary judgment may not simply argue that evidentiary facts requiring a trial on the merits may exist, "nor may [a party] rest upon the allegations of the complaint." *Dow v. Chilili Coop. Ass'n*, 1986-NMSC-084, ¶ 13, 105 N.M. 52, 728 P.2d 462; *see Juneau v. Intel Corp.*, 2006-NMSC-002, ¶ 15, 139 N.M. 12, 127 P.3d 548 ("[T]he non-movant may not rest on the pleadings, but must demonstrate genuine issues of material fact by way of sworn affidavits, depositions, and similar evidence.").

{27}   "In determining which issues of fact are material facts . . . we look to the substantive law governing the dispute." *Farmington Police Officers Ass'n v. City of Farmington*, 2006-NMCA-077, ¶ 17, 139 N.M. 750, 137 P.3d 1204. As we noted above, Petitioners abandoned their tortious interference with an expected inheritance and undue influence claims in the proceedings below. Where a party has abandoned a claim and does not subsequently argue or revive the abandoned claim in the district court, the claim is not sufficiently preserved. *Cf. Benz v. Town Ctr. Land, LLC*, 2013-

NMCA-111, ¶ 24, 314 P.3d 688 ("To preserve an issue for review on appeal, it must appear that [the] appellant fairly invoked a ruling of the trial court on the same grounds argued in the appellate court." (internal quotation marks and citation omitted)); *Budget Rent-A-Car Sys., Inc. v. Bridgestone*, 2009-NMCA-013, ¶ 10, 145 N.M. 623, 203 P.3d 154 (explaining that, where a party abandoned a claim in the course of litigation, that party was prohibited from renewing the abandoned claim at a later time). Consequently, the only issue remaining for this Court's review is the order granting summary judgment on Petitioners' conversion claim.

{28}   To prevail on a claim for conversion, a claimant must demonstrate "the unlawful exercise of dominion and control over personal property belonging to another in exclusion or defiance of the owner's rights, or acts constituting an unauthorized and injurious use of another's property, or a wrongful detention after demand has been made." *Muncey v. Eyeglass World, LLC*, 2012-NMCA-120, ¶ 22, 289 P.3d 1255 (internal quotation marks and citation omitted).

{29}   In their motion for summary judgment, Respondents set forth sixteen undisputed material facts and attached record evidence in support. Petitioners did not challenge any of Respondents' undisputed facts below, nor do they do so on appeal. Instead, citing *Juneau*, 2006-NMSC-002, ¶ 27, Petitioners merely contend that "the credibility of a witness, a party to the case, is always a material fact." Petitioners take this case out of context. In *Juneau*, the plaintiff alleged his employer committed

16

wrongful termination and retaliation, and the district court granted summary judgment in favor of the defendants. *Id.* ¶¶ 1, 26. In holding that summary judgment was improper, our Supreme Court noted that the plaintiff had proffered disputed facts relevant to the claims in question and that it was for a jury to determine the credibility of those facts. *Id.* ¶¶ 25-26; *see id.* ¶ 27 ("Trial is the only sure way to test . . . conflicting allegations, at which time the fact-finder can weigh the evidence and judge the credibility of the principal witnesses. It is well-settled in New Mexico that summary judgment is not an appropriate vehicle for courts to do either."). Contrary to Petitioners' assertion, the *Juneau* Court did not hold that the plaintiff's credibility created an issue of disputed fact but only that it was the fact-finder's job to weigh the credibility of witnesses in relation to, and in light of, the allegations made. Indeed, the credibility of a witness, in and of itself, is not a fact. *See Black's Law Dictionary* 709 (10th ed. 2014) (defining "fact" as "[s]omething that actually exists; an aspect of reality"). To be more precise, the credibility of a witness may be relevant to proving or disproving a fact, but is not, standing alone, a fact. *See Archuleta v. Lacuesta*, 1999-NMCA-113, ¶ 14, 128 N.M 13, 988 P.2d 883 ("Neither we, nor the district court, are entitled to weigh evidence or pass on the credibility of witnesses in deciding summary judgment issues." (internal quotation marks and citation omitted)).

{30}     In this case, Petitioners have not raised any disputes of material fact and their claim that Respondents are not credible is an unsupported assertion with no factual

17

basis.[1] "Arguments by counsel are not evidence and cannot be used to create a material issue of fact to defeat summary judgment." *Cain v. Champion Window Co. of Albuquerque, LLC*, 2007-NMCA-085, ¶ 14, 142 N.M. 209, 164 P.3d 90. Further, Petitioners have made no argument that their claim for conversion otherwise succeeds as a matter of law. Accordingly, we hold that the district court did not err in granting Respondents' motion for summary judgment.

**Sanctions**

{31}     Petitioners' appeal of the district court's award of Rule 1-011 sanctions is fivefold. Petitioners allege that (1) the case "exposes Mr. Kastler to malpractice"; (2) "the district court misconstrued the law"; (3) Petitioners had a "subjective good faith belief in the accuracy of their allegations"; (4) they had engaged in a good faith effort

---

[1]We note that in their response to Respondents' motion for summary judgment, Petitioners requested a continuance pursuant to Rule 1-056(F), stating that they needed more time for discovery to respond to Respondents' motion because they had not finished deposing the Respondents. Petitioners do not contend on appeal that they were unable to complete discovery, and we therefore do not address this issue. In any event, in their response and reply below, Petitioners did not attach an affidavit specifically explaining why more time and discovery was needed. *See Butler v. Deutsche Morgan Grenfell, Inc.*, 2006-NMCA-084, ¶ 38, 140 N.M. 111, 140 P.3d 532 (explaining that when a party seeks a continuance of a summary judgment determination, under Rule 1-056(F), the "party must submit an affidavit explaining why additional time and discovery are needed"). And they also failed to specify what they hoped to discover in additional depositions. *See id.* ¶ 39 (declining to allow a party to defeat a summary judgment motion when "he never made any specific allegations regarding what he hoped to find in discovery").

18

to challenge the correctness of current law; and (5) Respondents violated their fiduciary duty to Petitioners.

{32} Because the district court did not assess the amount of sanctions, we first address whether the issue before us is sufficiently final for review. "[O]ur appellate jurisdiction is limited to review of 'any final judgment or decision, any interlocutory order or decision which practically disposes of the merits of the action, or any final order after entry of judgment which affects substantial rights.' " *Capco Acquisub, Inc. v. Greka Energy Corp.*, 2007-NMCA-011, ¶ 17, 140 N.M. 920, 149 P.3d 1017 (alteration omitted) (quoting NMSA 1978, § 39-3-2 (1966)). However, "[w]here a judgment declares the rights and liabilities of the parties to the underlying controversy, a question remaining to be decided thereafter will not prevent the judgment from being final if resolution of that question will not alter the judgment or moot or revise decisions embodied therein." *Massengill v. Fisher Sand & Gravel Co.*, 2013-NMCA-103, ¶ 16, 311 P.3d 1231 (internal quotation marks and citation omitted). In this case, the district court ordered Respondents to "present, by affidavit of counsel, attorney's fees and costs accrued in connection with the defense of this matter in a subsequent pleading praying for money judgment" against Petitioners and their counsel and provided Petitioners the opportunity to object to the fees and costs contained in the affidavits. The district court had not ruled on the issue of the damage amount before these appeals were filed; however, that is not a barrier to our appellate

19

review. *See Landess v. Gardner Turf Grass, Inc.*, 2008-NMCA-159, ¶ 5, 145 N.M. 372, 198 P.3d 871 (observing that the underlying proceedings were "sufficiently final" to permit appellate review where an order had been entered resolving the merits of the underlying litigation and imposing sanctions pursuant to Rule 1-011, notwithstanding the fact that the specific amount of the sanctions award was undecided); *cf. Audette v. Montgomery*, 2012-NMCA-011, ¶ 10, 270 P.3d 1273 ("An order granting attorney fees but not setting the amount . . . constitutes a final, appealable order.").

{33} Several of Petitioners' arguments pertaining to the district court's imposition of Rule 1-011 sanctions have been raised for the first time on appeal, and we decline to entertain those contentions. Specifically, we do not address Petitioners' arguments that Rule 1-011 sanctions were improper because the instant litigation had exposed Kastler to malpractice[2] and that the district court misconstrued the law when it considered previous wills in its final order because prior wills have no bearing on the will being probated.[3] "To preserve an issue for review on appeal, it must appear that

---

[2] We also point out that Petitioners did not cite any authority for the proposition that a claim cannot be frivolous if a party-lawyer notifies his malpractice insurance provider of the claim against him.

[3] To the contrary, however, the district court was establishing the fact that Sammis had "only left a token amount of property" to Pearson in her previous wills. It does not appear from the district court's final order that the district court was using extrinsic evidence to analyze Sammis' Last Will and Testament. *See In re Estate of Frietze*, 1998-NMCA-145, ¶ 10, 126 N.M. 16, 966 P.2d 183 ("If a will is unambiguous, extrinsic evidence may not be accepted to determine the intent of the testator."). In fact, the district court laid out approximately fifty factors explaining the

20

appellant fairly invoked a ruling of the trial court on the *same grounds* argued in the appellate court." *Benz*, 2013-NMCA-111, ¶ 24 (emphasis added) (internal quotation marks and citation omitted); *see* Rule 12-216(A) NMRA ("To preserve a question for review it must appear that a ruling or decision by the district court was fairly invoked[.]"). As we stated in *State v. Allen*:

> The primary purposes for the preservation rule are: (1) to specifically alert the district court to a claim of error so that any mistake can be corrected at that time, (2) to allow the opposing party a fair opportunity to respond to the claim of error and to show why the district court should rule against that claim, and (3) to create a record sufficient to allow this Court to make an informed decision regarding the contested issue.

2014-NMCA-047, ¶ 9, 323 P.3d 925 (internal quotation marks and citation omitted).

{34} Petitioners have failed to show us where in the record these arguments were preserved , and we will not search the record to support their arguments. *See State v. Clements*, 2009-NMCA-085, ¶ 19, 146 N.M. 745, 215 P.3d 54 ("This Court will not search the record to find whether an issue was preserved where [the parties do] not refer this Court to appropriate transcript references.").

{35} We also decline to review Petitioners' argument that the district court misconstrued the law when it concluded that the dismissal of Petitioners' petition in the probate matter (before a different district court judge) was a dismissal with prejudice. Although Petitioners preserved the argument below, they have failed to set

---

basis for its imposition of Rule 1-011 sanctions. None of these factors address whether Sammis may have left any property to Petitioners in her previous wills.

21

forth any argument or cite any controlling authority as to why this was not proper. *See Curry*, 2014-NMCA-031, ¶ 28 ("Where a party cites no authority to support an argument, we may assume no such authority exists.").

{36}     We now turn to Petitioners' argument that there was a good faith basis for their allegations in the verified complaint as that issue was properly preserved. We also address Petitioners' contention that their appeal "is the continuation of their good faith effort to modify the law" and their claim that Respondents violated their fiduciary duty to Petitioners.

{37}     An appellate court reviews the imposition of sanctions for abuse of discretion. *See Enriquez v. Cochran*, 1998-NMCA-157, ¶ 20, 126 N.M. 196, 967 P.2d 1136. Under this standard, we consider the following: (1) "the full record to determine whether the trial court's decision is without logic or reason, or clearly unable to be defended"; (2) whether the sanction is appropriate in light of the nature of the conduct and level of culpability found by the trial court; (3) "whether the court's findings and decision are supported by substantial evidence"; and (4) the "trial court's exploration of alternatives to the sanctions ultimately imposed." *Id.* ¶¶ 20-21. The district court's order in this case contained extensive findings, none of which Petitioners challenge on appeal.

{38}     Under Rule 1-011(A), a party or attorney's signature on a document certifies that "there is good ground to support" the pleading, motion, or other document. "For

22

a willful violation of this rule an attorney or party may be subjected to appropriate disciplinary or other action. Similar action may be taken if scandalous or indecent matter is inserted." *Id.* "The primary goal of Rule [1-011] is to deter baseless filings in district court." *Rivera v. Brazos Lodge Corp.*, 1991-NMSC-030, ¶ 14, 111 N.M. 670, 808 P.2d 955. Furthermore, the standard for whether Rule 1-011 sanctions are appropriate is subjective. *Landess*, 2008-NMCA-159, ¶ 16. "Any violation depends on what the attorney or litigant knew and believed at the relevant time and involves the question of whether the litigant or attorney was aware that a particular pleading should not have been brought." *Id.* (internal quotation marks and citation omitted). Additionally, "[s]anctions should be entered against an attorney . . . when a pleading or other paper is unsupported by existing law." *Id.* (internal quotation marks and citation omitted).

{39}     In addition to Rule 1-011, "[c]ourts have the inherent power, independent of statute or rule, to award attorney fees to vindicate their judicial authority and compensate the prevailing party for expenses incurred as a result of frivolous or vexatious litigation." *Id.* ¶ 19 (alteration, internal quotation marks, and citation omitted). "It has long been recognized that a court must be able to command the obedience of litigants and their attorneys if it is to perform its judicial functions. Such powers inhere in judicial authority and exist independent of statute[.]" *State ex rel.*

23

*N.M. Highway & Transp. Dep't v. Baca*, 1995-NMSC-033, ¶ 11, 120 N.M. 1, 896 P.2d 1148.

{40}    Petitioners first argue that there was a good faith basis for their allegation of tortious interference with an expected inheritance. In our deferential review of a district court's imposition of Rule 1-011 sanctions, we affirm a district court when the "sanctions are based on findings of facts that are supported by evidence in the record." *Benavidez v. Benavidez*, 2006-NMCA-138, ¶ 15, 140 N.M. 637, 145 P.3d 117. The elements of the tort are "(1) an expectancy; (2) a reasonable certainty that the expectancy would have been realized but for the interference; (3) intentional interference with the expectancy; (4) tortious conduct involved with the interference, such as fraud, duress, or undue influence; and (5) damages." *Wilson*, 2002-NMCA-105, ¶ 11. Here, the district court's numerous findings of fact were supported by evidence in the record. The district court specifically found that Petitioners' attorney "was unaware of any evidence to support any of the elements of tortious interference with an expectancy of inheritance." The district court found that Petitioners did not have an expectancy as both knew they "had no reason to believe that . . . Sammis would leave [them] anything from her estate." The court additionally found that Petitioners "had no facts supporting a claim to any damages" caused by Respondents.

{41}    Having reviewed the full record to "determine whether the [district] court's decision [was] without logic or reason, or clearly unable to be defended[,]" we

24

conclude that the district court's finding that Petitioners did not have facts to advance their tort claim was supported by substantial evidence. *See Enriquez*, 1998-NMCA-157, ¶ 20. For instance, the record reveals that Blumenshine conveyed her interest in the Chase Ranch to Sammis in 1960. During her deposition, Blumenshine admitted she never had a discussion with Sammis about whether Sammis intended to leave her any property. Blumenshine also admitted that she never expected the Chase Ranch to be left to her. As for Pearson, she similarly acknowledged during her deposition that she never discussed any property with Sammis. Therefore, the district court's decision was reasonable based on substantial evidence in the record indicating Petitioners did not have an expectancy in the Chase Ranch. *See id.* (explaining that under the abuse of discretion standard the appellate court determines "whether the court's findings and decision are supported by substantial evidence").

{42}     Moreover, evidence before the district court demonstrated that Petitioners knew that the allegations of tortious interference with an expected inheritance were not supported by facts at the time the complaint was filed. *See Landess*, 2008-NMCA-159, ¶ 16 (discussing the subjective standard by which Rule 1-011 sanctions are judged). In fact, counsel for Petitioners admitted that any claim to the Chase Ranch was merely brought to ensure that, when Blumenshine prevailed on the conversion claim, there would be something she could recover in the event Respondents sold all the property. Counsel's admission reveals that there was not good grounds to support Petitioners'

25

complaint, but rather, that the complaint was intended to impede the probate of Sammis' will. *See* Rule 1-011(A). Further, counsel's statement suggests there was a deliberate and "willful violation" of Rule 1-011(A). *See id.* ("For a willful violation of this rule an attorney or party may be subjected to appropriate disciplinary or other action.").

{43} Turning next to the undue influence claim, we conclude that the district court's findings of fact were supported by substantial evidence in the record and justified the award of sanctions. *See Benavidez*, 2006-NMCA-138, ¶ 15. The court specifically found that Petitioners put forth no facts supporting the undue influence claim. Throughout the proceedings, however, Petitioners have argued they made a "good faith effort to modify the law." In their response to the motion for sanctions, for example, Petitioners asserted, "Without an established set of checks and balances, trustees may become corrupt, dishonest and self-dealing in their handling of the trust estate." And in their brief to this Court, Petitioners state that "[l]awyers who prepare estate document[s] should be prohibited from being named as a personal representative, trustee or director." Petitioners also argue that lawyers "should not be allowed, as a matter of public policy, to perpetuate [their] job security by insinuating themselves into positions of control over their clients['] wills, trust or foundations." Despite Petitioners' arguments, however, the record is devoid of any evidence indicating that Kastler engaged in self-dealing or abused his position as an attorney.

26

Parties may not make unfounded accusations purely to challenge perceived injustices in the law. *See generally Landess*, 2008-NMCA-159, ¶ 17 ("[P]atently meritless actions abuse the judicial process and impose enormous burdens on the courts and the parties who must defend such claims."). "The mere assertions and arguments of counsel are not evidence." *Chan v. Montoya*, 2011-NMCA-072, ¶ 9, 150 N.M. 44, 256 P.3d 987 (internal quotation marks and citation omitted). Therefore, we conclude that the district court did not abuse its discretion in rejecting Petitioners' contention that their undue influence claim was grounded in a good faith effort to change the law.

{44} Additionally, the district court reasonably found that there were no facts suggestive of undue influence in the record. *See generally Bernier v. Bernier ex rel. Bernier*, 2013-NMCA-074, ¶ 21, 305 P.3d 978 ("Upon the imposition of Rule 1-011 sanctions, the district court must enter findings of fact that are supported by evidence in the record that indicate the basis for the sanctions."). Our Supreme Court has defined "undue influence" as "influence, improperly exerted, which acts to the injury of the person swayed by it or to the injury of those persons whom he or she would have benefited." *Chapman v. Varela*, 2009-NMSC-041, ¶ 6, 146 N.M. 680, 213 P.3d 1109 (alteration, internal quotation marks, and citation omitted). A presumption of undue influence arises if there is a confidential or fiduciary relationship with the donor coupled with suspicious circumstances. *Id.* ¶ 7. Suspicious circumstances include, but are not limited to:

27

(1) old age and weakened physical or mental condition of testator; (2) lack of consideration for the bequest; (3) unnatural or unjust disposition of the property; (4) participation of beneficiary in procuring the gift; (5) domination or control over the donor by a beneficiary; and (6) secrecy, concealment, or failure to disclose the gift by a beneficiary.

*Id.* (internal quotation marks and citation omitted).

{45}    In its findings of fact, the district court impliedly found that there was an absence of suspicious circumstances. For instance, the district court found that Petitioners "recognized . . . Sammis was aware of the extent and character of the property she owned and of the natural objects of her bounty in 2004" when the final will and the Trust were executed. The district court also found that Sammis "was aware of who her family and friends were and was aware of what it meant to make a will in 2004." It found that Petitioners "knew . . . Sammis was a headstrong person all of her life and was strong willed in 2004." The district court's findings of fact are supported by both Petitioners' depositions, and Petitioners do not claim that such facts are inaccurate. We therefore agree with the district court that Petitioners "had no facts supporting a claim [Respondents] exerted undue influence upon . . . Sammis in connection with the creation and execution of her 2004 will and [T]rust."

{46}    Because we reject Petitioners' argument that the allegation of undue influence was based on a good faith effort to modify the law, and we conclude that the district court reasonably found there were no facts suggestive of undue influence, we hold that

28

the district court did not abuse its discretion in awarding sanctions against Petitioners for advancing their undue influence claim.

{47} We next address Petitioners' argument that Respondents violated a fiduciary duty to Petitioners because they were co-personal representatives of Sammis' estate and refused to give Blumenshine the silver pursuant to Sammis' handwritten notes. We understand Petitioners' argument to be that this fiduciary duty justified the conversion allegations in the complaint because Respondents "had a duty to give certain items to . . . Blumenshine." According to the district court's findings of fact, however, Petitioners did not advance any facts demonstrating that Respondents owed Petitioners a fiduciary duty and found that Petitioners' allegations were "completely groundless."

{48} Relying on *In re Estate of Gardner*, 1992-NMCA-122, ¶¶ 32-33, 114 N.M. 793, 845 P.2d 1247, Petitioners argue that Respondents "had a fiduciary duty to them in connection with [Sammis'] testamentary dispositions." In *Gardner*, the personal representative had fraudulently misrepresented the will's terms to the devisees. *Id.* ¶¶ 32-36. This Court held that the district court did not abuse its discretion in finding the personal representative breached her fiduciary duty to petitioners. *Id.* ¶ 33. This Court additionally held that a "personal representative . . . [has] a duty to distribute the estate in accordance with the will and New Mexico law 'consistent with the best interests of the estate' and 'for the best interest of successors to the estate.' " *Id.* ¶ 32

(quoting NMSA 1978, § 45-3-703(A) (2011)). Unlike in *Gardner*, however, there is no allegation in the present case that Respondents fraudulently represented the terms of Sammis' will. Rather, the closest contention to one of fraudulent misrepresentation is that the mistaken designation of Pearson as a devisee in the application for informal probate somehow gave her standing. Moreover, there is not substantial evidence that Respondents did not distribute the estate in accordance with Sammis' final will and New Mexico law, although Petitioners allege that Respondents did not deliver all the silver to Blumenshine.[4] *See In re Estate of Gardner*, 1992-NMCA-122, ¶ 32.

{49}     Furthermore, there was no evidence in the record of a confidential or fiduciary relationship between Respondents and Petitioners. *See Swallows v. Laney*, 1984-NMSC-112, ¶ 10, 102 N.M. 81, 691 P.2d 874 ("A fiduciary relationship exists in all cases where there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of one reposing the confidence." (internal quotation marks and citation omitted)); *see also In re Keeney*, 1995-NMCA-102, ¶ 16, 121 N.M. 58, 908 P.2d 751 ("A confidential or fiduciary relationship exists when one person places trust and

[4]We note that Petitioners' complaint did not allege that Respondents failed to properly distribute the silver. Instead, the conversion claim involved the allegation that Petitioners were entitled to 50 percent of the personal property at the Chase Ranch. Consequently, the silver was not the subject of this appeal.

confidence in the integrity and fidelity of another."). In fact, Pearson testified during her deposition that the first time she met Kastler was at Sammis' funeral, and she believed she had seen Pease only once before. She never spoke to Kastler after Sammis' death. Likewise, Blumenshine testified during her deposition that the first time she interacted with Kastler was at Sammis' funeral. Blumenshine met Pease once before Sammis' funeral but did not speak with him. A confidential and fiduciary relationship cannot be said to exist under such circumstances. *See Swallows*, 1984-NMSC-112, ¶ 10; *In re Keeney*, 1995-NMCA-102, ¶ 16. Because Petitioners do not allege that Respondents engaged in fraudulent misrepresentation or that Petitioners placed their confidence in Respondents, the district court's finding that Petitioners did not have a fiduciary relationship with Respondents is reasonable and supported by substantial evidence in the record. *See Enriquez*, 1998-NMCA-157, ¶¶ 20-21.

{50}     Finally, we consider whether the Rule 1-011 sanctions are appropriate in light of "the nature of the conduct and level of culpability" found by the district court, and whether the district court's "exploration of alternatives to the sanctions" was sufficient. *See id.* The district court found that numerous "allegations in [Petitioners'] verified complaint [were] simply mean and scandalous and appear[ed] calculated to inflict embarrassment and harm to the reputations" of Respondents. Petitioners do not challenge this statement, and we do not find error with the court's findings. In addition, we observe that many of the allegations in Petitioners' complaint were not

31

only "mean and scandalous," but were also unrelated to Petitioners' legal claims. We do not find it necessary to run down the whole litany of these accusations but will note a few as examples. Petitioners alleged that Kastler pushed to have Sammis cremated "because he wanted to avoid an autopsy of [Sammis] to determine the cause of death"; Pease knew that Sammis and Gobble were partners and that somehow this impacted his interactions with Sammis because he disapproved of homosexuality; Respondents severely mistreated Gobble after Sammis' death, including by doing "what they could to get [Gobble] to die sooner rather than later"; and Respondents had Sammis' dog killed. Given the wholly unsupported nature of these accusations, we conclude that the district court did not abuse its discretion in imposing Rule 1-011 sanctions. *See* Rule 1-011(A) (stating that sanctions are appropriate if "scandalous or indecent matter is inserted").

{51}     In addition, the district court did not abuse its discretion in granting Rule 1-011 sanctions because, as detailed in our analysis above, evidence in the record supports the district court's finding that Petitioners and their attorney engaged in willful violations of Rule 1-011. *See Rivera*, 1991-NMSC-030, ¶ 13 ("A court may exercise its discretion and impose sanctions for a willful violation of the rule when it finds, for example, that a pleading or other paper signed by an attorney is not well grounded in fact, is not warranted by existing law or a reasonable argument for its extension, or is interposed for an improper purpose.").

**{52}** Lastly, Petitioners do not allege that the district court's exploration of alternatives to sanctions was insufficient; therefore, we will assume such exploration was sufficient. *See Farmers, Inc. v. Dal Mach. & Fabricating, Inc.*, 1990-NMSC-100, ¶ 8, 111 N.M. 6, 800 P.2d 1063 ("The presumption upon review favors the correctness of the trial court's actions."); *see also Enriquez*, 1998-NMCA-157, ¶ 21 ("[P]art of our calculus includes a review of the trial court's exploration of alternatives to the sanctions ultimately imposed. This latter inquiry is not strictly required . . . but the subject recommends itself as a generally useful exercise both on appeal and for the trier in the first instance."). We again observe that an appellate court should not reach issues that the parties have failed to raise in their briefs. *See In re Doe*, 1982-NMSC-099, ¶¶ 3, 5, 98 N.M. 540, 650 P.2d 824. Nevertheless, we note that the district court had the independent judicial authority to impose sanctions in light of this frivolous and vexatious litigation. *See Landess*, 2008-NMCA-159, ¶ 19. Accordingly, we hold that the district court did not abuse its discretion in imposing Rule 1-011 sanctions.

**CONCLUSION**

**{53}** We affirm the dismissal of Pearson, the grant of summary judgment in favor of Respondents on Petitioners' conversion claim, and the imposition of Rule 1-011 sanctions against Petitioners and their counsel. We remand to the district court to assess the amount of sanctions.

**{54}** **IT IS SO ORDERED.**

_____
**LINDA M. VANZI, Judge**

**WE CONCUR:**

_____
**J. MILES HANISEE, Judge**

_____
**STEPHEN G. FRENCH, Judge**